## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| METROPOLITAN AFRICAN METHODIST EPISCOPAL CHURCH,<br><br>Plaintiff,<br><br>v.<br><br>HUDSON VALLEY PROUD BOYS CHAPTER; WILLIAM PEPE; JOHN DOES 1-100,<br><br>Defendants. | Case No. 25-6396<br><br>**<u>COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Metropolitan African Methodist Episcopal Church ("Plaintiff," "Metropolitan AME," or the "Church") brings this action for injunctive, monetary, and other relief against Defendants Hudson Valley Proud Boys Chapter and William Pepe, President of the Hudson Valley Proud Boys Chapter, for unlawful and ongoing infringement of Plaintiff's trademark rights and other violations of law. Metropolitan AME, by its undersigned attorneys, upon personal knowledge with respect to itself and its actions and otherwise on information and belief, alleges as follows:

### PRELIMINARY STATEMENT

1. Metropolitan AME is a historic Black church in Washington, D.C. It is the place where Frederick Douglass had his funeral, where Eleanor Roosevelt spoke, and where Barack Obama prayed on the morning of his second inauguration.

2. On the night of December 12, 2020, the Church was viciously attacked by a mob of individuals affiliated with the Proud Boys—a radical, all-male white supremacist group. The Proud Boys members scaled a fence and stormed the Church's grounds. They tore down the Church's "Black Lives Matter" sign from the churchyard, stomped on it and cut it into pieces, and loudly and publicly celebrated its destruction all over social media.

3.     Metropolitan AME refused to be intimidated.  The Church filed suit for trespass, theft, and destruction of property in the Superior Court of the District of Columbia against Proud Boys International, L.L.C. ("PBI") and others.  *See* Complaint, *Metropolitan African Methodist Episcopal Church* v. *Proud Boys Intern., L.L.C.*, Case No. 2021-CA-000004-B (D.C. Super. Ct. Jan. 4, 2021).  After the defendants defaulted, the court entered a default judgment against PBI and its leaders that has grown to over $3.1 million with interest and attorneys' fees (the "Judgment").  *See* Judgment, *Metropolitan African Methodist Episcopal Church, L.L.C.* v. *Proud Boys Intern., L.L.C.*, Case No. 2021-CA-000004-B, 2023 WL 4680104 (D.C. Super. Ct. June 30, 2023).  A copy of the Judgment is attached as **Exhibit 1**.

4.     To collect on the Judgment, which remains almost entirely unpaid, Metropolitan AME brought a lawsuit against PBI and others seeking the rights to the Proud Boys' only known valuable asset—trademark rights in the name "Proud Boys."  *See* Complaint, *Metropolitan African Methodist Episcopal Church* v. *Proud Boys Intern., L.L.C.*, Case No. 2024-CAB-004147 (D.C. Super. Ct. July 2, 2024).

5.     After several entities agreed to resolutions with the Church, in February 2025, the Superior Court of the District of Columbia ordered the transfer of "[a]ll of PBI's interests in the trademark 'Proud Boys' . . . to Metropolitan [AME]," and simultaneously imposed a lien on the "Proud Boys" trademark in favor of Metropolitan AME.  *Metropolitan African Methodist Episcopal Church*, Case No. 2024-CAB-004147, at 2 (D.C. Super. Ct. Feb. 3, 2025) (the "Trademark Order").  The court also permanently enjoined "Defendant Proud Boys International, L.L.C. and its successors, assignees, representatives, and any other persons acting in concert or coordination with them . . . from selling, transferring, disposing of, or licensing the trademark

'Proud Boys'" without Metropolitan AME's consent or the court's approval.  *Id.*  A copy of the Trademark Order is attached as **Exhibit 2**.

6.      The groups around the country identifying themselves as "Proud Boys" chapters have, for many years, used the trademark to sell merchandise, fundraise, collect dues, and advertise on websites.  As a result of the Trademark Order, all use of the name by or on behalf of the chapters should cease immediately, and any money the chapters have obtained from using the name should be applied toward the Judgment the Proud Boys owe to the Church.

7.      Metropolitan AME now brings this case to enforce the Trademark Order, prevent the Hudson Valley Proud Boys Chapter and its president William Pepe from further violations, and collect on amounts due for past infringement.

8.      To this day, the Hudson Valley Proud Boys Chapter and its president William Pepe, in concert with other John Does, continue to unlawfully use the "Proud Boys" trademark.

9.      Plaintiff brings this case for damages for infringement since February 1, 2021, when PBI's affiliates revoked the license for the Proud Boys organization to use the "Proud Boys" trademark.  Defendants thus have had no lawful authorization to use the name "Proud Boys" since February 2021.  Because the Trademark Order awarded "[a]ll of PBI's interests in the trademark 'Proud Boys'… to Metropolitan [AME]," Plaintiff is entitled to the remedies PBI would have for violation of such rights since such time.  A copy of the letter revoking the license is attached as **Exhibit 3**.

10.      Defendants' ongoing, willful infringement is tarnishing Metropolitan AME's trademark and is causing significant harm to Metropolitan AME.

11.    Metropolitan AME now brings this action seeking an injunction prohibiting Defendants' use of the name "Proud Boys," monetary damages for the past, unauthorized use of the Proud Boys name, as well as other relief, as set forth herein.

## PARTIES

12.    **Plaintiff Metropolitan AME**: Metropolitan AME is a church located at 1518 M Street, NW, in the heart of Washington, D.C.  Founded in 1872 after the merger of two segregated Black congregations, it is affiliated with the African Methodist Episcopal Church, a predominantly African American Methodist denomination that has the distinction of being the first independent Protestant denomination founded by Black people in the United States.

13.    As a result of the Trademark Order, Metropolitan AME now owns all of PBI's interests in the "Proud Boys" trademark.

14.    **Defendant Hudson Valley Proud Boys Chapter**: The Hudson Valley Proud Boys Chapter is an unincorporated association that is a local Chapter[1] of the Proud Boys fraternal order.  The Hudson Valley Proud Boys Chapter is currently active, and is engaged in membership activities through a self-styled "Proud Boys USA" website alongside other means. *See* https://www.proudboysusa.com/newyork/, (last checked Aug. 4, 2025) listing the Hudson Valley Proud Boys Chapter as among the chapters currently active in New York.  (Ex. 5 at 4.)

15.    **Defendant William Pepe**:  William Pepe has served as President of the Hudson Valley Chapter while the Chapter was infringing on the Proud Boys trademark.  Pepe resided in Dutchess County, New York, until June 2025.  In October 2024, Pepe was convicted of a felony (tampering with records, documents, or objects, obstructing, impeding, or interfering with

---

[1] The Proud Boys chapters are formed, and recruit members, based on locations.  *See, e.g.*, https://www.nyproudboys.com/chapters/ (Ex. 4 at 5).

law enforcement during a civil disorder) and four misdemeanors (entering and remaining in a restricted building or grounds, disorderly and disruptive conduct in a restricted building or grounds, and tampering with records, documents, or other objects) by a federal jury for his role in the January 6 U.S. Capitol attack. Pepe's convictions were based on his inciting a riot and destroying evidence related to the January 6 attack. *United States* v. *Pepe*, No. 21-052-2 (D.D.C. Oct. 23, 2024). He was pardoned on January 23, 2025, by President Trump.

## JURISDICTION AND VENUE

16.    This Court's jurisdiction is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

17.    Plaintiff's first and second causes of action arise under the Lanham Act, 15 U.S.C. § 1125, *et seq.*, and thus this Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331.

18.    This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is an out-of-state corporation located in Washington, D.C., and Defendants are citizens of New York because Defendant Pepe is a resident of New York, and Defendant Hudson Valley Proud Boys Chapter is an unincorporated association made up of New York citizens. The amount in controversy exceeds $75,000.

19.    In the alternative, this Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

20.    This Court has personal jurisdiction over Defendants pursuant to CPLR § 301 because the Proud Boys' Hudson Valley Chapter is an unincorporated association that operates in the State of New York. Members of the Hudson Valley Proud Boys Chapter reside in the State of New York. William Pepe, the leader of the Hudson Valley Proud Boys Chapter, resided in Dutchess County, New York, until June 2025.

21.     In addition, Defendants are subject to this Court's personal jurisdiction because they: (i) transacted business within the state pursuant to CPLR § 302(a)(l); (ii) committed tortious acts within the state pursuant to CPLR § 302(a)(2); and/or (iii) committed tortious acts outside the state causing injury to person or property within the state, expect or should reasonably expect the act to have consequences in the state, and derived substantial revenue from interstate commerce pursuant to CPLR § 302(a)(3)(ii).

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because members of the Hudson Valley Chapter reside in this District (as defined in 28 U.S.C. § 1391(c)) and/or pursuant to 28 U.S.C. § 1391(b)(2) and CPLR § 503, and because a substantial part of the events or omissions giving rise to this action have occurred and/or will occur in this District.

## FACTS

### A.  PBI and the Proud Boys Organization

23.     PBI was the parent entity of the Proud Boys, a white supremacist organization and federated hierarchy consisting of national leadership and regional chapters, bylaws, and dues-paying members.  The Proud Boys organization has been governed by Enrique Tarrio, the Chairman and highest ranking member of the organization, who is vested with sole authority to serve as the public voice of the Proud Boys.

24.     PBI was formed in 2016 and managed by Jason Lee Van Dyke, a former Chairman of the Proud Boys, through JLVD Holdings L.L.C., a Texas limited liability company which (as stated in its certificate of formation, drafted by Van Dyke) was formed to "establish, maintain, govern, improve and promote the welfare of" the Proud Boys organization.

25.     The Proud Boys organization has committed and incited acts of violence against members of the Black and African American communities, as well as women, Muslims,

Jews, immigrants, and other historically marginalized peoples and organizations that support those populations. The Southern Poverty Law Center has designated the organization as a "hate group." The Anti-Defamation League describes the organization as "an extremist gang that has engaged in multiple acts of brutal violence and intimidation." The Canadian government has formally designated the Proud Boys as a "terrorist entity," while noting that groups identifying themselves as Proud Boys "espouse misogynistic, Islamophobic, anti-Semitic, anti-immigrant, and/or white supremacist ideologies and associate with white supremacist groups."

26.    Van Dyke was the "General Counsel" of the Proud Boys and was briefly its National Chairman. Henry "Enrique" Tarrio, the Chairman of the Proud Boys beginning in 2018, claimed that in the Fall of 2020, the organization had 22,000 members.

**B.    The Proud Boys Register for a Federal Trademark**

27.    The principal asset of PBI was the "Proud Boys" trademark. The "Proud Boys" trademark was registered with the U.S. Patent and Trademark Office ("USPTO") on May 8, 2018, by PBI's affiliate and alter ego, JLVD Holdings LLC ("JLVD Holdings"), and its successor The Van Dyke Organization. In December 2018, these PBI alter egos licensed the "Proud Boys" trademark to Tarrio, Van Dyke's successor as National Chairman of the Proud Boys organization. (Ex. 3.)

**C.    The Proud Boys Attack the Church**

28.    On December 12, 2020, hundreds of members of the Proud Boys organization traveled to Washington, D.C., to engage in violence and destruction of property against supporters of racial justice. Arriving in droves from around the country, they created a violent riot in Washington, D.C., committed brutal assaults against protestors and passersby,

destroyed property, and silenced peaceful speech by tearing down, igniting, and otherwise destroyed signs and banners supporting the Black Lives Matter movement.

29.    Metropolitan AME, like other nearby churches showing support for the Black Lives Matter movement, was terrorized through coordinated acts of violence.  Proud Boys members and supporters climbed over a fence surrounding the Church, came onto the Church's property, and destroyed a large Black Lives Matter sign the Church was proudly displaying— attempting to silence the Church's support for the racial justice movement with violent acts of trespass, theft, and destruction of property.

30.    On January 4, 2021, the Church brought suit against PBI,, Tarrio, and certain John Does, in the Superior Court of the District of Columbia asserting claims arising from the December 12, 2020 attack.  The Church's amended complaint alleged that PBI, its leadership, and certain of its members engaged in racially motivated acts of terror and violence targeting Plaintiff in an effort to intimidate Plaintiff and its congregants.  The Church asserted tort claims and statutory claims under the Bias-Related Conspiracy, Theft and Defacement of Private Property Code under D.C. Code §§ 22-3211, 22-3212.01, and 22-3704.  The Church also sought compensatory and punitive damages, attorneys' fees, and declaratory relief.

31.    The summons and complaint were served on Jason Van Dyke, as an agent for PBI, on January 6, 2021.

**D.    PBI, JLVD Holdings and The Van Dyke Organization Seek to Limit Use of the "Proud Boys" Trademark**

32.    On February 1, 2021, roughly three weeks after service of the Church's lawsuit was effected, Van Dyke, on behalf of The Van Dyke Organization, withdrew the license for the "Proud Boys" trademark previously granted to Tarrio.  (Ex. 3.)  Van Dyke, on behalf of

The Van Dyke Organization, sent a letter to Enrique Tarrio, the highest ranking member and National Chairman of the Proud Boys who is vested with sole authority to serve as the public voice of the Proud Boys, "notify[ing] [Tarrio] that [his] license to utilize the 'Proud Boys' trademark for any purpose is terminated, effective immediately." *Id.* Van Dyke's letter to Tarrio identified as a reason for terminating Tarrio's license the actions of the Proud Boys in "[e]ngaging in a rally on or around December 8 [sic], 2020 in Washington D.C. which resulted in the willful and wanton destruction of the private property of a place of worship." *Id.*

33.     Shortly thereafter, on February 10, 2021, Van Dyke purported to terminate PBI as an entity by filing a notice of termination with the Texas Secretary of State.[2]  That same day, PBI's alter ego The Van Dyke Organization, through Van Dyke, filed a request with the USPTO to surrender the registration of the "Proud Boys" trademark,[3] but did not seek to abandon its common law rights to the trademark.

**E.     Metropolitan AME Obtains Judgment Against PBI**

34.     On June 30, 2023, the Superior Court of the District of Columbia granted judgment in favor of Metropolitan AME in the amount of $1,036,626.78 against PBI and the leaders of the Proud Boys.  (Ex. 1.)  The court's June 30, 2023, Memorandum Opinion and Order found that the "hateful and overtly racist" conduct of the defendants—including PBI—was

---

[2] Despite the termination, Texas law permits a plaintiff to initiate new claims against dissolved LLCs for up to three years after dissolution of the LLC.  Tex. Bus. Orgs. Code Ann § 11.356.  The LLC continues in existence to permit enforcement of the judgment when the judgment stems from an action filed within the three-year period after the date of the dissolved LLC's termination.  *Id.* at § 11.356(c).

[3] On March 5, 2021, the same day the USPTO issued notice of its cancellation of the trademark, Mad Aster Ltd Co. ("Mad Aster"), a newly formed shell entity affiliated with the Proud Boys organization, filed an application with the USPTO to register its rights to the trademark.  The USPTO has not granted Mad Aster's application to register the "Proud Boys" trademark, which remains pending.

"reprehensible to an extreme degree" and that the defendants' "hateful, race-based malice at the core of the unlawful acts the defendants perpetrated against Metropolitan AME on the night of December 12, 2020" were "loathsome actions, and the racist motivations underlying them, were egregious in all respects deemed relevant by the law." *Id.* at 30, 33.

35.    The award included interest, and the court later awarded $1,848,769.58 in attorneys' fees.  As of August 4, 2025, the total amount due on the Judgment and attorneys' fees order—including post-judgment interest at the D.C. statutory rate—has grown to $3,182,927.40.

**F.    Metropolitan AME's Rights to the "Proud Boys" Trademark**

36.    On July 2, 2024, Metropolitan AME brought a separate action in the Superior Court of the District of Columbia against PBI, JLVD Holdings L.L.C., The Van Dyke Organization, and Mad Aster, seeking to enforce its judgment by obtaining all rights to the "Proud Boys" trademark.  Complaint, *Metropolitan African Methodist Episcopal Church* v. *Proud Boys International, L.L.C.*, Case No. 2024-CAB-004147 (D.C. Super. Ct. July 2, 2024).

37.    In September and October 2024, Metropolitan AME entered into settlement agreements with Mad Aster, JLVD Holdings, and The Van Dyke Organization.  JLVD Holdings and The Van Dyke Organization agreed, among other things, that they have not assigned or transferred any right, title, or interest in the trademark to any other person or entity.  Mad Aster agreed, among other things, that it does not hold, nor has it ever held, any right, title, or interest in the "Proud Boys" trademark.

38.    On February 3, 2025, the court granted Metropolitan AME's Motion for Default Judgment and Injunctive Relief against the sole remining defendant, PBI.  (Ex. 2.) Specifically, the court ordered that "[a]ll of PBI's interests in the trademark 'Proud Boys,' formerly registered with the U.S. Patent and Trademark Office at Serial No. 87561573, shall be, and the

same hereby are, transferred to Plaintiff Metropolitan African Methodist Episcopal Church." *Id.* at 2. Further, the court ordered that "Defendant Proud Boys International, L.L.C. and its successors, assignees, representatives, and any other persons acting in concert or coordination with them, are permanently enjoined from selling, transferring, disposing of, or licensing the trademark 'Proud Boys' without the consent of Plaintiff Metropolitan African Methodist Episcopal Church or the approval of the Court." *Id.*

39.     In parallel with the transfer of the Proud Boys trademark, the court also ordered that a "lien . . . [be] imposed on the trademark 'Proud Boys,' formerly registered with the U.S. Patent and Trademark Office at Serial No. 87561573, in favor of Plaintiff Metropolitan African Methodist Episcopal Church pursuant to D.C. Code §§ 15-311, 16-542, and 16-544, D.C. Super. Ct. Civ. R. 69 and 69-I, and the common law." *Id.*[4]

## G.     Hudson Valley Proud Boys Chapter's Continued Use of Metropolitan AME's Trademark

40.     Defendants, as a local chapter and local leader of the Proud Boys organization reporting to Proud Boys National Chairman, Enrique Tarrio, have made and continue to make use of the "Proud Boys" trademark, even though they have not been authorized to do so since Van Dyke's February 2021 letter withdrawing the license to use the trademark, and are now also in violation of the D.C. Superior Court's Trademark Order. Defendants infringe on the Church's trademark rights in at least the following ways:

---

[4] Since The Van Dyke Organization's request to surrender its registration of the "Proud Boys" trademark with the USPTO, in addition to the pending Mad Aster application described above, several parties have filed applications to register "Proud Boys" and formative trademarks for various goods and services, including an application by Rick Rifle and Wilfredo Hernandez, and an application by the Church.

41.     **Websites and Internet Domain Names**: The Hudson Valley Proud Boys Chapter is one of eight local Proud Boys chapters in New York.    *See* https://proudboysusa.com/newyork/ (Ex. 5 at 4); https://www.nyproudboys.com/chapters (Ex. 4 at 5).   The Hudson Valley Proud Boys Chapter, individually and collectively with the other New York Proud Boys chapters, operates, controls and maintains multiple websites, each of which uses the "Proud Boys" trademark prominently and refers to their group as "Proud Boys."   *See* https://proudboysusa.com/ (Ex. 5 at 1); https://www.nyproudboys.com/about-us/ (Ex. 4 at 2–3); https://proudboys.io/ (Ex. 6).   For example, www.nyproudboys.com uses the "Proud Boys" trademark in the domain name, and includes a large, conspicuous header consisting of the trademark on its home page to promote and market the New York Proud Boys chapters:



*See* www.nyproudboys.com  (Ex. 4 at 1).

42.     The Hudson Valley Proud Boys Chapter is currently and actively using these websites to spread awareness about the organization.  The www.nyproudboys.com site uses the "Proud Boys" trademark in the header of every sub-page, including the "About" page and "Contact" page.   *See* https://www.nyproudboys.com/about-us/ (header: "Who are the ***Proud Boys***") (Ex. 4 at 2–3); https://www.nyproudboys.com/contact/ (header: "Contact the New York ***Proud Boys***") (Ex. 4 at 4).   **Error! Hyperlink reference not valid.**In another example, the

"Chapters" page of the www.nyproudboys.com site includes a large and bolded heading using the "Proud Boys" name:



*See* https://www.nyproudboys.com/chapters/ (header: "New York ***Proud Boys***") (Ex. 4 at 5). As shown in the screenshot above, the "Chapters" page allows viewers to navigate to different "Proud Boys" chapters in New York State, including the Hudson Valley Proud Boys Chapter, and submit a "Prospect information application" in order to "apply[] for membership in [the] fraternity." *Id.* at 5–6.

43.    Additionally, https://proudboys.io/, (Ex. 6), uses the "Proud Boys" trademark in the domain name and in the header of the home page:

> Uhuru!
>
> Welcome to the Proud Boys directory.
>
> Chapter List

44.    Further, https://proudboys.io/ uses the "Proud Boys" name in its landing page, which includes a dictionary of the contact information for the various New York Proud Boys

chapters, including the Long Island Proud Boys Chapter and its email address (info@proudboys.io) and Telegram account (http://t.me/proudboysLI); the Capital District Proud Boys Chapter's email address (upstate.ny.pb.Vetting@gmail.com); the Central Proud Boys Chapter's email address (Proudboyscny1@gmail.com); and the Northern Proud Boys Chapter's email address (Northern.NY.PB@protonmail.com).  https://proudboys.io/ (Ex. 6).

45.    The Hudson Valley Proud Boys Chapter makes use of both www.nyproudboys.com and https://proudboys.io/ for the purposes of self-promotion, recruiting and soliciting members, and selling merchandise bearing the "Proud Boys" trademark.  For example, www.nyproudboys.com includes a form to submit an application for membership of the Hudson Valley Proud Boys Chapter, https://www.nyproudboys.com/chapters/hudson-valley/ (Ex. 4 at 6), and https://proudboys.io/ includes contact information for New York Proud Boys chapters where membership inquiries can be sent.  https://proudboys.io/ (Ex. 6).

46.    **Membership Meetings**: The Hudson Valley Proud Boys Chapter uses the "Proud Boys" name to facilitate and organize membership meetings.  The https://proudboysusa.com/ website clearly states that Proud Boys chapters, including, by extension, the Hudson Valley Proud Boys Chapter, are required to "meet[] IN PERSON at least once a month."  https://www.proudboysusa.com/about-us/ (Ex. 5 at 3).  The website notes that attendance is mandatory at these in-person meetings.  *See id.* ("Each chapter meets IN PERSON at least once a month and it is a requirement to attend.").

47.    **Merchandise and Clothing**: The Hudson Valley Proud Boys Chapter uses the "Proud Boys" trademark with respect to membership and affiliations in this "Proud Boys" Chapter and various clothing worn with the "Proud Boys" trademark, including name plates, hats, and stickers.  For example, the Hudson Valley Proud Boys Chapter members make and wear

stickers stating "Proud Boys HVNY".  Transcript of Record at 161, *United States* v. *Pepe*, No. 1:21-cr-00052-TJK (2024) (No. 169).  The Hudson Valley Proud Boys Chapter members similarly make stickers and hats with the Proud Boys name and logo.  *Id.*

48.    Proud Boys merchandise has been and is still being sold on numerous websites and domain names since 2021.  A compilation of online merchandise listings bearing the "Proud Boys" trademark is attached as **Exhibit 7**.

49.    **Membership and Dues**: As stated above, the Proud Boys website makes clear that all Proud Boys chapters, including the Hudson Valley Chapter, are required to meet in person at least once a month.  The Hudson Valley Proud Boys Chapter uses the "Proud Boys" trademark to signal membership within the organization.

50.    The Hudson Valley Proud Boys Chapter has collected annual dues from its members so as to maintain its operations.  Those dues have been paid in significant part so that members could call themselves "Proud Boys."

51.    The value of these unlawful merchandise sales and membership dues exceeds $75,000.

52.    **Recruitment**:  Furthermore, the Hudson Valley Proud Boys Chapter uses the "Proud Boys" name to recruit new members.  The Proud Boys' websites contain sign-up pages and application forms asking prospective members for the Hudson Valley Proud Boys Chapter to provide their details in a "Proud Boy" contact form.  *See* https://www.proudboysusa.com/ny-hudsonvalley/ (Ex. 5 at 5); https://www.nyproudboys.com/chapters/hudson-valley/ (Ex. 4 at 6).



53.  Furthermore, recent social media activity by Enrique Tarrio clearly shows the Hudson Valley Proud Boys Chapter using the www.proudboysusa.com website and the "Proud Boys" trademark to recruit new members and spread awareness regarding the Proud Boys' organization and its tenets.  Tarrio has repeatedly promoted the www.proudboysusa.com website on his X account, including posts on January 28, February 7, and May 12, 2025.  In Tarrio's May 12, 2025 post, he went further, promoting the www.proudboysusa.com website with an image of a rooster standing atop a gun—a direct nod to the official emblem of the group identifying themselves as Proud Boys.



Posted on X on May 12, 2025.



Posted on X on May 27, 2025.



Posted on X on February 7, 2025.

54.     **Telegram:** The Hudson Valley Proud Boys Chapter also uses the "Proud Boys" trademark on the messaging platform Telegram.  For example, another New York Proud Boys Chapter, the "Uncle Sam's Proud Boys" Chapter, which is located in Upstate New York, maintains a Telegram Channel with 541 subscribers that improperly makes use of the "Proud Boys" trademark on its page:



As described above, the Hudson Valley Proud Boys Chapter has used and continues to use the "Proud Boys" trademark in their activities.

**H.      Metropolitan AME's Demand That Defendants Refrain from Infringing**

55.     Since the Trademark Order was issued, Metropolitan AME has been using the name "Proud Boys" in commerce.

56.     The Church, as the current owner of all of PBI's interests in the trademark (including the associated goodwill), is trying to evolve the "Proud Boys" name to be associated with the Church's mission of love and humanity, rather than white supremacy, hatred, and violence, and in doing so transform and improve the goodwill the Church inherited in connection therewith.

57.     The Church's use of the "Proud Boys" trademark has become notorious. The Church's use of the name has been, and continues to be, widely reported by prominent news and other media outlets such as *The New York Times* (Alan Feuer, *Proud Boys Lose Control of Their Name to a Black Church They Vandalized*, N.Y. TIMES, Feb. 3, 2025,

https://www.nytimes.com/2025/02/03/us/politics/proud-boys.html); *The Washington Post* (Peter Hermann, *Black D.C. church vandalized by Proud Boys awarded control of group's name*, WASH. POST, Feb. 4, 2025, https://www.washingtonpost.com/dc-md-va/2025/02/04/dc-black-church-proud-boys-name-trademark-rights/); MSNBC (Zahara Hill, *Proud Boys looking to sell merch will now have to tell it to the church*, MSNBC, Feb. 5, 2025, https://www.msnbc.com/the-reidout/reidout-blog/metropolitan-ame-church-proud-boys-trademarks-rcna190864); CNN (Devan Cole, *DC judge gives control of Proud Boys' trademark to Black church attacked by far-right group*, CNN, Feb. 7, 2025, https://www.cnn.com/2025/02/04/politics/proud-boys-dc-black-church); *Rolling Stone* (Meagan Jordan, *Black Church Already Selling Proud Boys-Style Merch After Winning Trademark*, ROLLING STONE, Feb. 12, 2025, https://www.rollingstone.com/politics/politics-features/proud-boys-trademark-black-church-shirts-1235265640/); the *Washingtonian* (Andrew Beaujon, *DC Church Adds Black Pride Slogans to Proud Boys Merchandise*, WASHINGTONIAN, April 4, 2025, https://www.washingtonian.com/2025/04/04/dc-church-metropolitan-ame-proud-boys-shirts-black-pride/) and (Washingtonian Staff, *100 Reasons to Love DC Right Now*, WASHINGTONIAN, July 1, 2025, https://www.washingtonian.com/2025/07/01/reasons-to-love-dc-best-of/); *Southern Poverty Law Center* (Brad Bennett, *Black church's win against Proud Boys offers hope in the fight against racism*, SPLC, Feb. 6, 2025, https://www.splcenter.org/resources/hopewatch/washington-black-church-win-against-proud-boys/); and ESSENCE (*Historical Black Church Now Owns Rights to 'Proud Boys' Name*, ESSENCE, Feb. 5, 2025, https://www.instagram.com/essence/p/DFs4ytiyR25/), among others.

58.     Defendants' continued use of the name "Proud Boys" violates the Trademark Order and risks causing serious confusion about the ownership of the trademark rights in the "Proud Boys" name.

59.     On June 26, 2025, Metropolitan AME served William Pepe with a cease and desist letter demanding that the Hudson Valley Proud Boys Chapter "immediately cease and desist from using the PROUD BOYS name in connection with the Chapter's communications, sale of merchandise, membership dues and/or any other activities." Metropolitan AME also requested information regarding the Hudson Valley Proud Boys Chapter's use of the "Proud Boys" name, all sales and revenue relating to such use, information regarding online platforms used to sell merchandise relating to such use, and records of membership dues from February 1, 2021, to the present. Metropolitan AME requested that the Hudson Valley Proud Boys Chapter confirm that it has complied and will continue to comply with the cease and desist demand by July 9, 2025. A copy of the cease and desist letter is attached as **Exhibit 8**. The Hudson Valley Proud Boys Chapter has not provided documents or any information in response to the Church's requests regarding the Chapter's use of the trademark and has not stopped using the Proud Boys name in connection with the Chapter's activities.

60.     In addition to Defendants' refusal to substantively respond to the Church's letter, Defendants have openly demonstrated complete disregard for the court ruling transferring rights in the trademark to the Church. Tarrio stated publicly his intent to "wipe my ass" with the court's Trademark Order. Meagan Jordan, *Black Church Already Selling Proud Boys-Style Merch After Winning Trademark*, ROLLING STONE, Feb. 12, 2025, https://www.rollingstone.com/politics/politics-features/proud-boys-trademark-black-church-shirts-1235265640/. Tarrio has similarly declared that he "hold[s] in contempt any motions,

judgments, and orders issued against [him]." Alan Feuer, *Proud Boys Lose Control of Their Name to a Black Church They Vandalized*, N.Y. TIMES, Feb. 3, 2025, https://www.nytimes.com/2025/02/03/us/politics/proud-boys.html.

## FIRST CLAIM
### Unfair Competition and False Designation of Origin
### under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)
### (Against All Defendants)

61.    Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

62.    Metropolitan AME owns the trademark rights in the "Proud Boys," which, by virtue of its use by Metropolitan AME, in connection with the promotion and sale of goods such as T-shirts bearing the "Proud Boys" mark, has gained widespread consumer recognition and has developed valuable goodwill associated therewith.

63.    Defendants have used, and are continuing to use, Metropolitan AME's "Proud Boys" trademark in interstate commerce, without the consent of Metropolitan AME, to identify Defendants' goods and services and/or in connection with the sale, advertising and promotion of such goods and services.

64.    Defendants' conduct as alleged above constitutes the unauthorized use in commerce of Metropolitan AME's "Proud Boys" trademark in connection with the infringing products and has caused and/or is likely to cause confusion, mistake, or deception of the public as to: (i) the affiliation, connection, and/or association of Metropolitan AME with the Defendants and the infringing products; (ii) the origin of the infringing products; and/or (iii) the sponsorship, endorsement, or approval of the infringing products by Metropolitan AME, in each case in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.    Defendants' actions were deliberate, willful, and in conscious disregard of Metropolitan AME's rights.

66.    Defendants' conduct as alleged above has caused and/or will cause Metropolitan AME to suffer injury, for which it has no adequate remedy at law.

67.    Pursuant to 15 U.S.C. § 1117, Metropolitan AME is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, and to the costs of this action and to attorneys' fees.

## SECOND CLAIM
### Trademark Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)
### (Against All Defendants)

68.    Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

69.    Metropolitan AME's "Proud Boys" trademark is famous and well-known throughout the United States, within the meaning of 15 U.S.C. § 1125(c).  As a result of recent use, advertising, promoting, and selling T-shirts bearing the "Proud Boys" mark in celebrating the Church's victory against the Proud Boys' attack, such mark has become uniquely associated with Metropolitan AME and its products advocating for racial justice.

70.    Defendants have used, and are continuing to use, Metropolitan AME's "Proud Boys" trademark in interstate commerce, without the consent of Metropolitan AME, in connection with the sale of goods and services and/or in connection with the advertising and promotion of such goods and services.  Defendants, through their unauthorized use and/or impending plans for unauthorized use, are undermining the Church's ability and right to control and transform the goodwill signified by the famous "Proud Boys" trademark from an association with white supremacy, hatred, and violence, which is diametrically opposed to the Church's mission of love and humanity.

71.     Defendants' activities have caused, and unless enjoined, will continue to cause, a likelihood of disparagement and damage of the "Proud Boys" trademark by tarnishing the mark.

72.     Defendants' unauthorized use of the "Proud Boys" trademark and its imitations are also likely to dilute the mark by tarnishing its inestimable value through impermissible association with products and services  that are connected to the Proud Boys' message of intolerance, which would reflect negatively on Metropolitan AME and its message of dignity and tolerance, in violation of 15 U.S.C. § 1125(c).

73.     Defendants' actions were deliberate, willful, and in conscious disregard of Metropolitan AME's rights.  Notwithstanding Metropolitan AME's demands that Defendants stop the infringing activity and provide assurances that the infringing conduct has ceased, Defendants continue to use the Metropolitan AME's trademark and have failed to provide the requested assurances.  Defendants' conduct will cause irreparable harm to Metropolitan AME and to its goodwill and reputation.

74.     Defendants' conduct as alleged above has caused and/or will imminently cause Metropolitan AME to suffer irreparable harm, for which it has no adequate remedy at law.

75.     Pursuant to 15 U.S.C. § 1117, AME is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, and to the costs of this action and to attorneys' fees.

### **THIRD CLAIM**
### **Common Law Trademark Infringement**
### **(Against All Defendants)**

76.     Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

77.     Defendants' conduct as alleged above constitutes infringement and misappropriation of the Metropolitan AME's "Proud Boys" trademark in violation of Metropolitan AME's rights under common law and in equity.  Defendants' unauthorized use in commerce in the United States or the State of New York of Metropolitan AME's "Proud Boys" trademark is likely to confuse consumers as to the source or sponsorship of Defendants' products.

78.     Defendants' actions were deliberate, willful, and in conscious disregard of Metropolitan AME's rights.

79.     Defendants' conduct as alleged above has caused and/or will cause Metropolitan AME to suffer injury, for which it has no adequate remedy at law.

80.     Metropolitan AME is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to attorneys' fees.

## FOURTH CLAIM
### Trademark Dilution and Injury to Business Reputation under NY Gen. Bus. Law § 360-L
### (Against All Defendants)

81.     Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

82.     Metropolitan AME is the exclusive owner of Metropolitan AME's "Proud Boys" trademark.

83.     Metropolitan AME's "Proud Boys" trademark is distinctive within the meaning of New York General Business Law § 360-L.

84.     Defendants' use of Metropolitan AME's "Proud Boys" trademark has injured, or is likely to injure, the business reputation of Metropolitan AME and has diluted, or is likely to dilute, the distinctive quality of the "Proud Boys" trademark.

85.    Defendants have acted willfully and deliberately and have profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

86.    By virtue of the foregoing, Defendants have caused Metropolitan AME to suffer injuries for which it is entitled to recover damages, including, but not limited to, Defendants' profits.

87.    Defendants' acts are causing and continue to cause Metropolitan AME irreparable harm in the nature of loss of control over its "Proud Boys" trademark.  This irreparable harm to Metropolitan AME will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

88.    Metropolitan AME has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

89.    All of these acts constitute trademark dilution under New York General Business Law § 360-L.

**<u>FIFTH CLAIM</u>**
**Common Law Unfair Competition**
**(Against All Defendants)**

90.    Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

91.    By using Metropolitan AME's "Proud Boys" trademark in commerce without authorization by Metropolitan AME, Defendants knowingly and willfully are confusing consumers by creating the false and misleading impression that Defendants and Defendants' infringing products are related to, affiliated with, or connected with Metropolitan AME.

92.    Defendants' deliberate and continued use of Metropolitan AME's "Proud Boys" trademark in connection with the marketing, advertising, promotion, and/or distribution of

its infringing products was and is done in bad faith with the intent to unfairly benefit from the use of Metropolitan AME's "Proud Boys" trademark.

93.     By reason of the foregoing, Defendants' conduct constitutes willful and deliberate false designation of origin, false description and representation, and unfair competition, in violation of Metropolitan AME's rights under common law and in equity.

94.     Defendants' actions were, and continue to be, deliberate, willful, and in conscious disregard of Metropolitan AME's rights.

95.     Defendants' conduct as alleged above has caused and/or will cause Metropolitan AME to be damaged in an amount not yet determined or ascertainable, for which it has no adequate remedy at law.

96.     Furthermore, Metropolitan AME is entitled to injunctive relief, actual damages in an amount to be determined at trial, and to Defendants' profits attributable to their unlawful conduct.

## SIXTH CLAIM
### Unjust Enrichment
### (Against All Defendants)

97.     Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

98.     By the acts alleged above, Defendants have been unjustly enriched by their unlawful conduct at the expense of Metropolitan AME.  Defendants' acts have unjustly enriched and wrongfully benefited Defendants, in an amount to be determined at trial and to which Metropolitan AME is rightfully entitled.

**SEVENTH CLAIM**
**Conversion**
**(Against All Defendants)**

99.     Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

100.     Metropolitan AME owns the "Proud Boys" trademark, which is a specific, identifiable property.   Defendants have been using the "Proud Boys" trademark without Metropolitan AME's authorization or payment of royalties to Metropolitan AME.   Defendants have exercised an unauthorized dominion over the trademark "Proud Boys," to the exclusion of Metropolitan AME's rights.

101.     The acts reflecting the unauthorized exercise of dominion and control over the trademark constitute conversion by Defendants of the trademark owned by Metropolitan AME.

**EIGHTH CLAIM**
**Lien Enforcement**
**(Against All Defendants)**

102.     Metropolitan AME repeats and realleges all other paragraphs of this Complaint, which are incorporated by reference as if set forth fully herein.

103.     Defendants have violated Metropolitan AME's rights under the lien granted to Metropolitan AME with respect to the "Proud Boys" trademark.   Defendants' continued and unauthorized use of the "Proud Boys" trademark without payment of licensing or royalty fees dissipates the value of the trademark and violates the lien's prohibition against the unauthorized dealing or disposition of the trademark.

104.     As a result of such use, Metropolitan AME is entitled to damages from Defendants in the form of past and present royalty payments and any other monies obtained from use of the "Proud Boys" trademark, for an amount to be determined at trial.

105.    Metropolitan AME is also entitled to recover its reasonable costs in bringing this lien enforcement action under D.C. Code § 16–542.

**PRAYER FOR RELIEF**

WHEREFORE, Metropolitan AME requests judgment against Defendants as follows:

106.    Preliminarily and permanently enjoining and restraining Defendants, its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from:

(a)    imitating, copying, or making unauthorized use of the Metropolitan AME trademark;

(b)    manufacturing, producing, distributing, advertising, promoting, selling, or offering for sale the infringing products and any product bearing Metropolitan AME's trademark;

(c)    using the Metropolitan AME trademark, any mark or design confusingly similar thereto, or that is derivative or referential—including without limitation to initials and abbreviations—in connection with the promotion, advertisement, display, sale, offering for sale, or distribution of any product;

(d)    making any designation of origin, descriptions, or representations indicating or suggesting that Metropolitan AME is the source or sponsor of, or in any way has endorsed or is affiliated with Defendants, or any product manufactured, distributed, promoted, marketed, or sold by Defendants;

(e)    engaging in any conduct that tends to dilute, tarnish, or blur the distinctive quality of Metropolitan AME's trademark; and

(f)    aiding or abetting any party in the commission of the acts specified in subparagraphs (a)–(e) above;

107.    Ordering Defendants to return or destroy all existing inventory of the infringing products and any associated advertising, promotional, marketing, or other materials that include Metropolitan AME's trademark;

108.    Ordering Defendants to account to Metropolitan AME for all gains, profits, savings, and advantages obtained by them as a result of their unlawful conduct, and awarding to Metropolitan AME restitution in the amount of all such gains, profits, savings, and advantages;

109.    Ordering Defendants to pay Metropolitan AME all royalties on sales made by Defendants using Metropolitan AME's trademark;

110.    Awarding to Metropolitan AME damages resulting from Defendants' unlawful conduct, including the amount by which Defendants were unjustly enriched, in an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 1117, with pre-judgment and post-judgment interest;

111.    Awarding to Metropolitan AME Defendants' profits attributable to its unlawful conduct, in an amount to be determined at trial and increased in the Court's discretion pursuant to 15 U.S.C. § 1117;

112.    Awarding to Metropolitan AME reasonable attorneys' fees, together with the costs and disbursements of this action and prejudgment interest;

113.    Awarding Metropolitan AME punitive damages in an amount sufficient to deter other and future similar conduct by Defendants, in view of Defendants' wanton and deliberate unlawful acts; and

114.    Granting Metropolitan AME such other and further relief as the Court deems just and proper.

Dated: August 4, 2025

Respectfully submitted,

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**

By: */s/  Len Kamdang*
  Len Kamdang
  1500 K Street NW, Suite 900
  Washington, D.C. 20005
  Tel: 202-662-8329
  Fax: 202-783-0857
  Email: lkamdang@lawyerscommittee.org

*Co-Counsel for Plaintiff Metropolitan African Methodist Episcopal Church*

**WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS**

By: */s/ Kaitlin Banner*
  Kaitlin Banner (*pro hac vice application forthcoming*)
  700 14th Street NW, Suite 400
  Washington, D.C. 20005
  Tel: 202-319-1000
  Fax: 202-319-1010
  Email: kaitlin_banner@washlaw.org

*Co-Counsel for Plaintiff Metropolitan African Methodist Episcopal Church*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Daniel J. Kramer*
  Daniel J. Kramer
  Geoffrey R. Chepiga
  Daniel S. Reich
  1285 Avenue of the Americas
  New York, N.Y. 10019-6064
  Tel: 212-373-3000
  Fax: 212-757-3990
  Email: dkramer@paulweiss.com
    gchepiga@paulweiss.com
    dreich@paulweiss.com

By: */s/ Paul D. Brachman*
  Paul D. Brachman
  2001 K Street, NW
  Washington, DC 20006-1047
  Tel: (202) 223-7300
  Fax: (202) 223-7420
  Email: pbrachman@paulweiss.com

*Co-Counsel for Plaintiff Metropolitan African Methodist Episcopal Church*