**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

METROPOLITAN AFRICAN METHODIST
EPISCOPAL CHURCH,

Plaintiff,

v.

HUDSON VALLEY PROUD BOYS CHAPTER;
WILLIAM PEPE; and JOHN DOES 1-100,

Defendants.

Case No. 25 Civ. 6396 (KPF)

<br>

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................................... 1

ARGUMENT .................................................................................................................. 5

I.    Plaintiff Is Entitled to Default Judgment Because it Sufficiently Alleged Each
      Claim ................................................................................................................. 6
      A.    Plaintiff Sufficiently Pleads the Elements of the Eight Complaint Claims ............ 6
            1.    Count 1: Unfair Competition and False Designation of Origin under
                  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ............................ 7
            2.    Count 2: Trademark Dilution under Section 43(c) of the Lanham Act,
                  15 U.S.C. § 1125(c) ............................................................................ 8
            3.    Count 3: Common Law Trademark Infringement ..................................... 9
            4.    Count 4: Trademark Dilution and Injury to Business Reputation
                  under NY Gen. Bus. Law § 360-L ...................................................... 10
            5.    Count 5: Common Law Unfair Competition ........................................... 10
            6.    Count 6: Unjust Enrichment .............................................................. 11
            7.    Count 7: Conversion ....................................................................... 12
            8.    Count 8: Lien Enforcement ............................................................... 13
      B.    All Other Factors Weigh in Favor of a Default Judgment ................................. 13

II.   Plaintiff Is Entitled to Its Requested Relief ....................................................... 15
      A.    Permanent Injunctive Relief ............................................................................ 15
      B.    Money Damages .............................................................................................. 18
            1.    Plaintiff Is Not Required to Prove Actual Damages .............................. 20
            2.    Plaintiff's Damages Are Estimable by Reference to Statutory
                  Damages ........................................................................................ 21
      C.    Attorneys' Fees and Costs ............................................................................... 22
            1.    The Lanham Act Allows Recovery of Reasonable Attorneys' Fees ........ 24
            2.    The Requested Fees Are Reasonable ................................................... 26

III.  No Inquest into Damages Is Necessary ............................................................. 28

CONCLUSION ............................................................................................................. 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co.* v. *Performance Supply, LLC*,
  2023 WL 3481608 (S.D.N.Y. Apr. 26, 2023)....................................................................14, 17

*4 Pillar Dynasty LLC* v. *New York & Co., Inc.*,
  933 F.3d 202 (2d Cir. 2019)..........................................................................................24

*Allstar Mktg. Grp. LLC* v. *andnov73*,
  2023 WL 5208008 (S.D.N.Y. Aug. 14, 2023) ..........................................................16

*Allstar Mktg. Grp. LLC* v. *Media Brands Co.*,
  775 F. Supp. 2d 613 (S.D.N.Y. 2011) ..........................................................................13

*Antetokounmpo* v. *Costantino*,
  2021 WL 5916512 (S.D.N.Y. Dec. 15, 2021) ), *report and recommendation
  adopted*, 2022 WL 36232 (S.D.N.Y. Jan 4, 2022) ....................................................24

*Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany & Albany
  Cnty. Bd. Of Elections*,
  522 F.3d 182 (2d Cir. 2008) .........................................................................................26

*Aston* v. *Sec'y of Health & Human Servs.*,
  808 F.2d 9 (2d Cir.1986) ..............................................................................................27

*Bermudez* v. *Colgate-Palmolive Co.*,
  667 F. Supp. 3d 24 (S.D.N.Y. 2023) ............................................................................11

*Boarding Sch. Rev., LLC* v. *Delta Career Educ. Corp.*,
  2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ...............................................................8

*Bridge Oil Ltd.* v. *Emerald Reefer Lines, LLC*,
  2008 WL 5560868 (S.D.N.Y. Oct. 27, 2008)...........................................................14, 15

*Burndy Corp.* v. *Teledyne Indus., Inc.*,
  748 F.2d 767 (2d Cir. 1984)..........................................................................................21

*C=Holdings B.V.* v. *Asiarim Corp.*,
  992 F. Supp. 2d 223 (S.D.N.Y. 2013)...........................................................................11

*Cement & Concrete Workers Dist. Council Welfar Fund* v. *Metrofoundation
  Contractors, Inc.*,
  699 F.3d 230 (2d Cir. 2012)........................................................................................5, 28

*City of New York* v. *Mickalis Pawn Shop, LLC,*
    645 F.3d 114 (2d Cir. 2011)..................................................................................6

*Coach, Inc.* v. *Reggae Hot Spot, Inc.,*
    WL 5536521 (S.D.N.Y. Dec. 10, 2010) ..............................................................21

*Corley* v. *Vance,*
    2020 WL 1322270 (S.D.N.Y. Mar. 20, 2020) .....................................................6

*Deere & Co.* v. *MTD Prods., Inc.,*
    41 F.3d 39 (2d Cir. 1994)..................................................................................10

*DL* v. *District of Columbia,*
    924 F.3d 585 (D.C. Cir. 2019)...........................................................................27

*Flawless Style LLC* v. *Saadia Group LLC,*
    2025 WL 2780121 (S.D.N.Y. Sep. 29, 2025)....................................................25

*Fleetwood Servs., LLC* v. *Ram Cap. Funding, LLC,*
    2023 WL 112429 (S.D.N.Y. Jan. 5, 2023) .......................................................26

*Foxmind Canada Enterprises Ltd.* v. *ABCTEC, et al.,*
    21-civ-5146 (KPF) (S.D.N.Y. Feb. 2, 2023) ....................................................28

*Gucci Am., Inc.* v. *Guess?, Inc.,*
    868 F. Supp. 2d 207 (S.D.N.Y. 2012)..............................................................10

*Gucci Am., Inc.* v. *Tyrrell-Miller,*
    678 F. Supp. 2d 117 (S.D.N.Y. 2008)..........................................................15, 16

*Guggenheim Capital, LLC* v. *Birnbaum,*
    722 F.3d 444 (2d Cir. 2013) ...........................................................................6, 13

*Harris* v. *Fairweather,*
    2012 WL 3956801 (S.D.N.Y. Sep. 10, 2012)....................................................15

*Hensley* v. *Eckerhart,*
    461 U.S. 424 (1983)......................................................................................26, 27

*Indymac Bank, F.S.B.* v. *Nat'l Settlement Agency, Inc.,*
    2007 WL 4468652 (S.D.N.Y. Dec. 20, 2007) ...................................................14

*Josie Maran Cosmetics, LLC* v. *Shefa Group LLC,*
    624 F. Supp. 3d 281 (E.D.N.Y. 2022) ..............................................................10

*Juicy Couture, Inc.* v. *Bella Int'l Ltd.,*
    930 F. Supp. 2d 489 (S.D.N.Y 2013)..................................................................7

*Kid Car NY, LLC* v. *Kidmoto Techs. LLC*,
    518 F. Supp. 3d 740 (S.D.N.Y 2021)......................................................................11

*Lilly* v. *City of New York*,
    934 F.3d 222 (2d Cir. 2019)..................................................................................26

*Lopez* v. *Gap, Inc.*,
    883 F. Supp. 2d 400 (S.D.N.Y 2012)......................................................................7

*Louis Vuitton. S.A.* v. *Spencer Handbags Corp.*,
    765 F.2d 966 (2d Cir. 1985)..................................................................................21

*Low Tech Toy Club*, LLC v. *Beanfun Home Store et al.*,
    24-civ-4982 (KPF) (S.D.N.Y. Apr. 4, 2025) .........................................................29

*Malletier* v. *Carducci Leather Fashions, Inc.*,
    648 F. Supp. 2d 501 (S.D.N.Y. 2009).....................................................................26

*Mason Tenders Dist. Council* v. *Duce Constr. Corp.*,
    2003 WL 1960584 (S.D.N.Y. Apr. 25, 2003)..........................................................14

*Metropolitan African Methodist Episcopal Church* v. *Proud Boys Int'l, LLC*,
    Case No. 2024-CAB-004147 (D.C. Super. Ct. Feb. 3, 2025)....................................13

*Mintable Pte. Ltd.* v. *Mintology Inc.*,
    2024 WL 4493770 (S.D.N.Y. Oct. 15, 2024) ..........................................................25

*Moses* v. *Martin*,
    360 F. Supp. 2d 533 (S.D.N.Y. 2004)......................................................................12

*Navika Capital Group, LLC* v. *John Doe*,
    14-CV-5968, 2017 U.S. Dist. LEXIS 2926 (E.D.N.Y. Jan. 6, 2017), *report
    and recommendation adopted*, 2017 U.S. Dist. LEXIS 40820 (E.D.N.Y. Mar.
    20, 2017) ........................................................................................................20, 21

*New York* v. *Green*,
    420 F.3d 99 (2d Cir. 2005).......................................................................................6

*Next Realty, LLC* v. *Next Real Estate Partners LLC*,
    2019 WL 1757781 (E.D.N.Y. Mar. 11, 2019).........................................................24

*NLRB* v. *Schmidt*,
    2024 WL 967225 (S.D.N.Y. Mar. 5, 2024) ............................................................27

*N.Y.C. Triathlon, LLC* v. *NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010).....................................................................18

iv

*O'Callaghan* v. *Sifre*,
   242 F.R.D. 69 (S.D.N.Y. 2007) ........................................................................13

*Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)........................................................................................24

*Ortho Sleep Prods., LLC* v. *Dreamy Mattress Corp.*,
   No. 11 CV 6049 CBA, 2012 WL 6621288 (E.D.N.Y. Aug. 29, 2012) ..................21

*Otter Prods., LLC* v. *4PX Express USA Inc.*,
   2025 WL 2144780 (S.D.N.Y. July 29, 2025) .....................................................15

*Pitbull Prods., Inc.* v. *Universal Netmedia, Inc.*,
   2007 U.S. Dist. LEXIS 82201 (S.D.N.Y. Nov. 7, 2007) .......................................22

*SEC* v. *Anticevic*,
   2009 WL 4250508 (S.D.N.Y. Nov. 30, 2009) ......................................................5

*Solomatina* v. *Mikelic*,
   370 F. Supp. 3d 420 (S.D.N.Y. 2019).................................................................12

*Shah* v. *N.Y.S. Dep't of Civil Serv.*,
   168 F.3d 610 (2d Cir. 1999)..............................................................................13

*Sream, Inc.* v. *Khan Gift Shop, Inc.*,
   2016 WL 1130610 (S.D.N.Y. Feb. 23, 2016)......................................................22

*Streamlight, Inc.* v. *Gindi*,
   2019 WL 6733022 (E.D.N.Y. Oct. 1, 2019)........................................................24

*Taizhou Zhongneng Imp. & Exp. Co.* v. *Koutsobinas*,
   509 F. App'x 54 (2d Cir. 2013)...........................................................................6

*Tamarin* v. *Adam Caterers, Inc.*,
   13 F.3d 51 (2d Cir. 1993).................................................................................28

*Tiffany & Co.* v. *Costco Wholesale Corp.*,
   2019 WL 120765 (S.D.N.Y. Jan. 7, 2019) .........................................................27

*Time, Inc.* v. *Petersen Publ'g Co. LLC*,
   173 F.3d 113 (2d Cir. 1999)...............................................................................7

*Trs. of the Loc. 813 I.B.T. Ins. Tr. Fund* v. *Chinatown Carting Corp.*,
   2008 WL 5111108 (E.D.N.Y. Dec. 4, 2008) .......................................................28

*Twentieth Century Fox Film Corp.* v. *Marvel Enters., Inc.*,
   220 F. Supp. 2d 289 (S.D.N.Y. 2002)..................................................................9

v

*Two Pesos, Inc.* v. *Taco Cabana, Inc.*,
    505 U.S. 763 (1992)................................................................................................7

*United States* v. *Pepe*,
    No. 1:21-cr-00052-TJK (2024)..............................................................................19

*U.S. Polo Ass'n, Inc.* v. *PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011)....................................................................16

*WPIX, Inc.* v. *ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012)...................................................................................17

**Statutes**

15 U.S.C. § 1116(a) ....................................................................................................15, 16

15 U.S.C. §1116(d)(1)(B) .................................................................................................22

15 U.S.C. § 1117(a) ............................................................................18, 19, 21, 23, 24

15 U.S.C. §1117(c) ............................................................................................................22

15 U.S.C. §1125(a) .........................................................................................................7, 8

15 U.S.C. §1125(c) .............................................................................................8, 18, 21

NY Gen. Bus. Law § 360-L .........................................................................................10, 16

**Other Authorities**

Fed. R. Civ. P. 12(a)(1)(A)(i) ..............................................................................................4

Fed. R. Civ. P. 55(b)(2)........................................................................................................5

Plaintiff Metropolitan African Methodist Episcopal Church ("Plaintiff," "Metropolitan AME," or the "Church") hereby moves for entry of default judgment, including an award of damages and injunctive relief, against Defendants the Hudson Valley Proud Boys Chapter ("Hudson Valley Chapter") and William Pepe, President of the Hudson Valley Chapter, for unlawful and ongoing infringement of Plaintiff's trademark rights and other violations of law.

Defendants have abandoned this case.  The Hudson Valley Chapter failed to enter an appearance or otherwise respond.  And while Pepe belatedly filed an Answer, the Court struck that Answer after finding it "substantively deficient."  Dkt. 29 at 2–3.  The Court then provided Pepe with "one final chance" to file an amended answer and Pepe has failed to do so.  Plaintiff promptly sought a Certificate of Default against both Pepe and the Hudson Valley Chapter, which the Clerk issued on December 19, 2025.  Dkt. 33.

Defendants' failure to defend this action warrants entry of a default judgment and all requested relief, including an injunction prohibiting Defendants' ongoing use of the "Proud Boys" mark, monetary damages of at least $75,000 dollars for Defendants' unauthorized use of the "Proud Boys" mark, and reasonable attorneys' fees and costs.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff is a storied historic Black church in Washington, D.C.  Plaintiff acquired ownership rights and a lien on the "Proud Boys" trademark in connection with a multimillion-dollar judgment stemming from an attack on the Church carried out by a mob of individuals affiliated with the Proud Boys.[1]  Dkt. 1 ¶¶ 1–5.  During this December 12, 2020 attack, Proud Boys members and supporters trespassed on the Church's property and destroyed a large Black

---

[1]    Defendants lost the right to the "Proud Boys" trademark on February 1, 2021, as set out in the Complaint at Paragraphs ¶¶ 32–40.

Lives Matter sign the Church was proudly displaying—attempting to silence the Church's

support for the racial justice movement with violent acts.  *Id*. ¶¶ 28–29.





The Church has since used the mark in interstate commerce, including through the sale of

shirts displaying the Church's "Proud Boys" trademark.  *See id.* ¶¶ 56–57, 62, 69.  These shirts

are emblazoned with golden yellow laurels around a "PB."  One shirt "Stay Proud, Stay Black,"

and another, "Stay Proud, Black Lives Matter."

The Church's use of the mark has been widely reported by prominent media, such as *The*

*New York Times*, *The Washington Post*, MSNBC, CNN, *Rolling Stone*, *Washingtonian*, and

*ESSENCE*, among others.  *Id*. ¶¶ 55–57.

Despite the Church's ownership of the trademark, Defendants continue to use—and on

information and belief profit from—the "Proud Boys" mark without a license from the Church.

*Id.* ¶¶ 14, 41–42, 46, 48, 52–54.  Defendants, individually and collectively with other chapters in

New York, operate, control, and/or maintain at least three websites and internet domains. Two remain publicly accessible: www.nyproudboys.com (last accessed January 16, 2026), and www.proudboysusa.com (last accessed January 16, 2026). *Id.* ¶ 41. A third site, https://proudboys.io/, is not currently online but was accessible as recently as August 4, 2025. *Id.* All three sites have displayed the "Proud Boys" trademark prominently and repeatedly, and both www.nyproudboys.com and www.proudboysusa.com continue to do so. *Id.*

Defendants use these websites to engage in self-promotion, recruiting and soliciting new members, and for selling merchandise bearing the "Proud Boys" mark. *Id.* ¶¶ 42–45, 52. Defendants also use social media to promote the infringing websites. For example, former Proud Boys chairman Enrique Tarrio has repeatedly promoted www.proudboysusa.com on his X (formerly Twitter) account, including in posts from January 28, February 7, and May 12, 2025. *Id.* ¶ 53.

Defendants have also used the "Proud Boys" trademark in connection with the manufacture and distribution of Hudson Valley Chapter-branded apparel and accessories such as name plates, hats, and stickers. For example, the Hudson Valley Chapter has produced stickers bearing the "Proud Boys HVNY" name as well as hats bearing the Proud Boys name and logo. *Id.* ¶ 47 (citing Transcript of Record at 161, *United States* v. *Pepe*, No. 21-cr-00052 (2024) (No. 169)). Such logos were displayed on numerous exhibits used at Defendant Pepe's criminal trial. *See id.*

On June 26, 2025, Plaintiff served Defendants, through personal service of the Chapter's President, William Pepe, with a letter demanding that Defendants immediately cease and desist from infringing on Plaintiff's trademark rights. *See* Declaration of Geoffrey Chepiga ("Chepiga Decl.") ¶ 8. In response, an attorney purporting to represent Pepe asserted that Pepe is no longer

3

affiliated with the Hudson Valley Chapter as of March 2021. *Id.* ¶ 9. Plaintiff's counsel requested proof, but Pepe's counsel did not respond. *Id.* ¶ 10.

On August 4, 2025, Plaintiff filed a Complaint against Defendants. Dkt. 1. The Complaint alleges that Defendants continue to unlawfully use—and profit from—the "Proud Boys" mark on several websites and elsewhere without a license from the Church. *Id*. ¶¶ 14, 41–42, 46–48, 52–54.

Pepe, who was served both in his individual capacity and as President of the Hudson Valley Chapter, personally accepted service of the Complaint on August 14, 2025. *See* Dkts. 16, 17. Defendants' answers were due on September 4, 2025, but no Defendant filed an answer by that date. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (setting a 21-day deadline to answer). On September 10, 2025, Pepe's counsel entered an appearance. *See* Dkt. 19. Without explanation or an extension request, Pepe filed a deficient and untimely Answer on September 18, 2025. *See* Dkt. 20; Chepiga Decl. ¶¶ 18–19.

Plaintiff scheduled a meet and confer with Pepe's counsel on September 30, 2025, to address these deficiencies, but Pepe's counsel failed to appear. *See* Chepiga Decl. ¶¶ 20–21. On October 2, 2025, Pepe's counsel offered to file an amended Answer, and on October 9, 2025, the parties jointly stipulated that "Pepe's Answer was untimely, and also deficient under the Federal Rules of Civil Procedure," and agreed that Pepe "shall file an Amended Answer, if any, by no later than October 17, 2025." Dkt. 21; *see also* Dkt. 22 (so-ordering this stipulated schedule). Pepe failed to file an amended Answer by the stipulated deadline.

On October 10, 2025, Plaintiff served a First Set of Interrogatories and a First Set of Requests for Production on Pepe. Chepiga Decl. ¶ 22. On October 13, 2025, Pepe's counsel

accepted service of Plaintiff's discovery requests. *Id.* Pepe has failed to provide any discovery responses.

On November 5, 2025, Plaintiff moved to strike Pepe's Answer. Dkt. 24. Pepe did not file an opposition to Plaintiff's motion.

On December 1, 2025, the Court granted Plaintiff's motion to strike. Dkt. 29. The Court deemed Pepe's Answer "substantively deficient" because it was comprised of blanket denials, including of "allegations that appear objectively true," which "compromis[ed] Plaintiff's ability to effectively litigate this case." *Id.* at 2–3. The Court also found Pepe's affirmative defenses deficient because his "bare assertions that the affirmative defenses apply, supported by zero facts," did not satisfy the plausibility standard. *Id.* at 3–4. The Court struck Pepe's Answer and affirmative defenses in their entirety and provided Pepe with "one final chance" to amend his Answer by December 16, 2025. *Id.* The Court warned Pepe that Plaintiff could seek a Certificate of Default if Pepe failed to provide a compliant Answer by that date. *Id.*

Once again, Pepe filed nothing. On December 19, 2025, the Clerk of Court entered a Certificate of Default against Defendants. Dkt. 33. Plaintiff now moves for entry of default judgment.

## **ARGUMENT**

Default judgment is appropriate if defendants fail to respond to a complaint. *SEC* v. *Anticevic*, No. 05-cv-6991, 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009); Fed. R. Civ. P. 55(b)(2). In such cases, all well-pleaded allegations in the complaint are accepted as true, except those related to damages. *Cement & Concrete Workers Dist. Council Welfare Fund* v. *Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

5

Due to Defendants' abandonment of this case, Plaintiff respectfully requests entry of default judgment, a permanent injunction enjoining any further infringement, damages in the amount of $75,000, and reasonable attorneys' fees and costs in the amount of $199,453.00.

## I.    Plaintiff Is Entitled to Default Judgment Because It Sufficiently Alleged Each Claim

A party defaults when it "fails to plead or otherwise defend" an action. *Guggenheim Capital, LLC* v. *Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013). "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York* v. *Green,* 420 F.3d 99, 104 (2d Cir. 2005)). The first step, which is typically performed by the clerk of court, "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id*. Plaintiff obtained entry of default against Defendants on December 19, 2025. Dkt. 33. The second step "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled." *Mickalis Pawn Shop*, 654 F.3d at 128–29. Final judgment is appropriate "if th[e] allegations are sufficient to state a cause of action against the defendant." *Corley* v. *Vance,* No. 15 Civ. 1800, 2020 WL 1322270, at *2 (S.D.N.Y. Mar. 20, 2020) (KPF) (quoting *Taizhou Zhongneng Imp. & Exp. Co.* v. *Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order). Plaintiff sufficiently alleges the eight causes of action in the Complaint.

### A.    Plaintiff Sufficiently Pleads the Elements of the Eight Complaint Claims

A default judgment is warranted in this case. The Complaint sufficiently pleads the elements of all eight claims it asserts. Because Plaintiff's claims are meritorious, Plaintiff is entitled to all requested relief.

6

       *1.     Count 1: Unfair Competition and False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

Plaintiff has alleged sufficient facts to establish a claim for unfair competition under the Lanham Act.  To establish liability under 15 U.S.C. § 1125(a), a party must demonstrate "(1) 'that it has a valid mark entitled to protection,' and (2) 'that the defendant's use of that mark is likely to cause confusion.'"  *Juicy Couture, Inc.* v. *Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 498 (S.D.N.Y. 2013) (quoting *Time, Inc.* v. *Petersen Publ'g Co. LLC,* 173 F.3d 113, 117 (2d Cir. 1999).  To establish protection, "a mark must be sufficiently distinctive."  *Lopez* v. *Gap, Inc.*, 883 F. Supp.2d 400, 414 (quoting *Two Pesos, Inc*. v. *Taco Cabana, Inc*., 505 U.S. 763, 768 (1992)).  A party may seek relief for an unregistered mark.  *See Two Pesos*, 505 U.S. at 768.

**First**, Plaintiff has demonstrated its valid, distinctive common law right to the "Proud Boys" trademark that is entitled to protection.  On February 3, 2025, the Superior Court of the District of Columbia ordered all interest in the trademark "Proud Boys" transferred to Plaintiff and permanently enjoined "Defendant Proud Boys International, L.L.C. and its successors, assignees, representatives, and any other persons acting in concert or coordination with them . . . from selling, transferring, disposing of, or licensing the trademark 'Proud Boys' without the consent of Plaintiff . . . or the approval of the court."  Dkt. 1 ¶ 38.  Plaintiff has since evolved association of the "Proud Boys" mark from one of hatred and white supremacy to one that represents Plaintiff's mission of love, humanity, and racial justice.  *See id.* ¶¶ 38, 56, 58, 64, 70.  Plaintiff's ownership and use of the "Proud Boys" mark has gained widespread notoriety through its own sales of merchandise and reporting in various prominent news and other media outlets.  *See id.* ¶ 57.

**Second**, Defendants' continued, unauthorized use is likely to cause confusion.  Defendants have made and continue to make use of the "Proud Boys" trademark without

authorization. *See id.* ¶¶ 40–54. This unauthorized use includes the Chapter's infringement on at least three websites, all of which prominently bear the "Proud Boys" mark; further, Plaintiff believes that the Chapter continues to sell merchandise bearing the mark and collect membership dues under the "Proud Boys" name. *See id.* ¶¶ 41, 47–50, 59; *see* Chepiga Decl. ¶¶ 32–35. Defendants' conduct has caused and/or is likely to cause confusion, mistake, or deception of the public as to: (i) the affiliation, connection, and/or association of Plaintiff with the Defendants and the infringing products; (ii) the origin of the infringing products; and/or (iii) the sponsorship, endorsement, or approval of the infringing products by Plaintiff, in each case in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

> 2. *Count 2: Trademark Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)*

"To prevail on a federal trademark dilution claim, a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution through either 'blurring' or 'tarnishment.'" *Boarding Sch. Rev., LLC* v. *Delta Career Educ. Corp.*, No. 11 Civ. 8921, 2013 WL 6670584, at *6 (S.D.N.Y. Mar. 29, 2013) (quoting 15 U.S.C. § 1125(c)(1)).

Plaintiff has established that its "Proud Boys" trademark is famous and well-known throughout the United States, within the meaning of 15 U.S.C. § 1125(c). As alleged in the Complaint, the "Proud Boys" mark has gained widespread consumer recognition and valuable goodwill by virtue of Plaintiff's use of the mark, including in connection with the Church's promotion and sale of merchandise bearing the mark, and through articles, interviews, and appearances in major news outlets.[2] Dkt. 1 ¶¶ 56, 62, 69. As a result of the Church's use of the

---

[2]    Relevant media recognition is set out in the Complaint at ¶ 57.

"Proud Boys" mark in connection with its message of tolerance and humanity, the mark has become associated with Plaintiff and its mission of racial justice. *Id.* ¶ 62.

Defendants have used, and continue to use, Plaintiff's "Proud Boys" trademark in interstate commerce, without Plaintiff's consent, to identify and/or sell, advertise, and promote Defendants' goods and services in a manner that dilutes the mark. *Id.* ¶¶ 63, 70, 73. This unauthorized use includes the prominent display of Plaintiff's "Proud Boys" mark on at least three websites used for recruitment purposes and the sale of merchandise featuring Plaintiff's "Proud Boys" mark. *Id.* ¶¶ 41–45, 47–48. This has caused a likelihood of disparagement, dilution, and damage to the "Proud Boys" trademark by tarnishing its value through impermissible association with products and services that are connected to Defendants' message of intolerance, which reflects negatively on Plaintiff and its message of tolerance and humanity. *See id.* ¶¶ 71–72.

### 3.    *Count 3: Common Law Trademark Infringement*

Defendants' conduct as alleged constitutes infringement and misappropriation of Plaintiff's "Proud Boys" trademark in violation of Plaintiff's rights under common law, as it is likely to confuse consumers as to the source or sponsorship of Defendants' products. "[T]he standards for trademark infringement . . . under New York common law are essentially the same as under the Lanham Act." *Twentieth Century Fox Film Corp.* v. *Marvel Enters., Inc.,* 220 F. Supp. 2d 289, 297–98 (S.D.N.Y. 2002). As set forth above, Plaintiff has alleged facts to establish a claim for unfair competition and trademark infringement under the Lanham Act. *See supra* Section I.A.1–2. Accordingly, Plaintiff has sufficiently alleged a claim for trademark infringement under New York common law.

    4.     *Count 4: Trademark Dilution and Injury to Business Reputation under NY Gen. Bus. Law § 360-L*

To succeed on a claim of trademark dilution and injury to business reputation under New York General Business Law § 360-L, "a plaintiff must prove (1) that it possesses a strong mark, one which has a distinctive quality or has acquired a secondary meaning such that the trade name has become so associated in the public's mind with the plaintiff that it identifies goods sold by that entity as distinguished from goods sold by others, and (2) a likelihood of dilution by either blurring or tarnishment." *Gucci Am., Inc.* v. *Guess?, Inc.*, 868 F. Supp. 2d 207, 241 (S.D.N.Y. 2012) (internal citation omitted).

Plaintiff's "Proud Boys" trademark is distinctive within the meaning of New York General Business Law § 360-L. Plaintiff owns the trademark rights to the "Proud Boys" mark and has distinguished its use as one representing Plaintiff's mission of love, humanity, and racial justice. *See* Dkt. 1 ¶¶ 38, 56, 58, 64, 70. Defendants, through their failure to engage in this litigation, do not dispute the distinctive nature of Plaintiff's trademark. *See id.; see also Deere & Co.* v. *MTD Prods., Inc.*, 41 F.3d 39, 42 (2d Cir. 1994) (clarifying that when a defendant does not dispute that a mark "is a distinctive trademark that is capable of dilution and has acquired the requisite secondary meaning in the marketplace . . . the primary question . . . is whether [Plaintiff] can establish a likelihood of dilution of this distinctive mark"). As alleged, Defendants' use of Plaintiff's trademark has, or is likely to, injure Plaintiff's reputation and has, or is likely to, dilute the distinctive quality of the trademark. *See* Dkt. 1 ¶¶ 71–72.

    5.     *Count 5: Common Law Unfair Competition*

To establish a claim for unfair competition under New York common law, "the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent." *Josie Maran Cosmetics, LLC* v. *Shefa Group LLC*, 624 F. Supp. 3d 281, 292 (E.D.N.Y. 2022); *see Kid Car NY,*

*LLC* v. *Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 753 (S.D.N.Y. 2021) ("The elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element of bad faith.").

Plaintiff stated a cause of action for common law unfair competition. As detailed above, Plaintiff adequately alleged an unfair competition claim under the Lanham Act. *See supra* Section I.A.1. And Plaintiff adequately alleged that Defendants' misuse of Plaintiff's mark is in bad faith. "Bad faith is presumed where the defendant intentionally copied the plaintiff[']s mark." *C=Holdings B.V.* v. *Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013). As alleged in the Complaint, and set forth above, Defendants have continued to use the Church's "Proud Boys" mark in commerce without the Church's authorization after all rights to the mark were transferred to the Church by the Superior Court of the District of Columbia. Dkt. 1 ¶¶ 5, 91. The Church further alleges that Defendants' continued use of the trademark following cease-and-desist letters and this litigation is willful and is done in bad faith. *Id.* ¶¶ 92–94. Because Defendants "intentionally us[ed] the [Proud Boys] trademark on products it marketed even after it lost the legal authority to do so," the bad faith element is satisfied. *C=Holdings B.V.*, 992 F. Supp. 2d at 244. Plaintiff is entitled to default judgment on its common law unfair competition claim.

### 6.     Count 6: Unjust Enrichment

Plaintiff's sixth claim is for unjust enrichment. To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by [the plaintiff]." *Bermudez* v. *Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023). Here, the Church alleges that Defendants were "unjustly enriched by their unlawful conduct at the expense of Metropolitan AME." Dkt. 1 ¶ 98. Specifically, the Church

11

alleges that Defendants were unjustly enriched by Defendants' unlawful use of the trademark in connection with the marketing, advertising, and promotion of their Chapter to increase membership, and/or distribution of Proud Boys merchandise. *Id*. ¶¶ 42–45, 47, 52. The Church further alleges that "Defendants' acts have unjustly enriched and wrongfully benefited Defendants" making it inequitable to allow Defendants to retain their profits. *Id*. ¶ 98. Defendants do not dispute these allegations.

### 7.    Count 7: Conversion

As to the seventh claim, under New York law, conversion is "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Solomatina* v. *Mikelic*, 370 F. Supp. 3d 420, 431 (S.D.N.Y. 2019) (quoting *Moses* v. *Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). To establish a claim of conversion, a plaintiff must show "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant 'exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Id*.

Here, Plaintiff owns rights to the "Proud Boys" trademark, which is specific, identifiable property. Dkt. 1 ¶ 100. Defendants have been using the trademark without the Church's authorization or payment of royalties to Metropolitan AME. *Id*. Defendants have thus exercised an unauthorized dominion over the trademark "Proud Boys," to the exclusion of Plaintiff's rights. *Id*. These allegations, taken to be true in view of Defendants' default, are sufficient to establish a claim of conversion.

8.      *Count 8: Lien Enforcement*

As to the eighth claim, Defendants have violated Plaintiff's rights under the lien granted to Plaintiff with respect to the trademark.  On February 3, 2025, the Superior Court of the District of Columbia imposed a lien on the trademark in favor of the Church.  *Metropolitan African Methodist Episcopal Church* v. *Proud Boys Int'l, LLC*, Case No. 2024-CAB-004147, at 2 (D.C. Super. Ct. Feb. 3, 2025); Dkt. 1 ¶ 5.  Defendants, acting in coordination with Proud Boys International, L.L.C., have continually violated Plaintiff's rights under this lien by using the trademark without authorization and without any payment of licensing or royalty fees to Plaintiff.  *See* Dkt. 1 ¶¶ 6, 9, 40–54.

The Court should accept these well-pleaded factual allegations as true and admitted, and find Defendants liable as to all eight counts.

**B.      All Other Factors Weigh in Favor of a Default Judgment**

"[T]he decision to grant a motion for default judgment lies in the sound discretion of the trial court."  *O'Callaghan* v. *Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (citing *Shah* v. *N.Y.S. Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  That discretion is guided by three additional factors: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  *Guggenheim Capital, LLC*, 722 F.3d at 455.  Here, all three factors weigh in favor of default judgment.

***First***, the Hudson Valley Chapter's failure to appear or submit *any* responsive pleading demonstrates its default is willful.  *See All-Star Mktg. Grp., LLC* v. *Media Brands Co.*, 775 F. Supp. 2d 613, 621–22 (S.D.N.Y. 2011).  Similarly, Pepe, despite being provided with numerous extensions, has failed to file an Answer that conforms to the Federal Rules of Civil Procedure.  Dkt. 29 at 2.  Pepe's initial answer was untimely and deficient.  *Id*.  And when this Court provided Pepe with "one final chance" to file an amended Answer, Pepe ignored that deadline.

13

Pepe also chose not to respond to Plaintiff's discovery requests or file an opposition to Plaintiff's motion to strike, despite stipulating to a briefing schedule. Dkt. 22. Pepe's failure to litigate despite being afforded second and third chances to do so "indicate[s] willful conduct." *See Indymac Bank, F.S.B.* v. *Nat'l Settlement Agency, Inc.*, No. 07-cv-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).

*Second*, Defendants have not raised any meritorious defense. Where a defendant fails to file an answer, no defense is properly before the Court. *Bridge Oil Ltd.* v. *Emerald Reefer Lines, LLC*, No. 06-cv-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council* v. *Duce Constr. Corp.*, No. 02-cv-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)). As noted, the Hudson Valley Chapter failed to appear or file any response to Plaintiff's Complaint. And on December 1, 2025, the Court struck Pepe's Answer in its entirety, including Pepe's unsupported and conclusory affirmative defenses. Dkt. 29. Pepe has not filed an amended Answer, and his deadline to do so has passed. Because Defendants have failed to meaningfully present a defense, "the Court cannot determine whether Defendant has a meritorious defense," and this factor weighs in favor of default. *3M Co.* v. *Performance Supply, LLC*, No. 20-cv-2949, 2023 WL 3481608, at *2 (S.D.N.Y. Apr. 26, 2023), *report and recommendation adopted*, 2023 WL 3480927 (S.D.N.Y. May 16, 2023).

*Third*, denying Plaintiff default judgment would be highly prejudicial as it would leave Plaintiff without recourse to enforce its trademark rights. The Hudson Valley Chapter has not entered an appearance, and Pepe has repeatedly disregarded his legal obligations in this matter. The Church seeks to enforce its trademark rights, and has expended resources prosecuting this action, including expenses stemming directly from Defendants' lack of responsiveness and

14

failure to adhere to Court-ordered deadlines.  Absent a default judgment, "there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd.*, 2008 WL 5560868, at *2.

Accordingly, this Court should grant default judgment against Defendants.

## II.    Plaintiff Is Entitled to Its Requested Relief

Plaintiff respectfully requests that the Court grant a permanent injunction against Defendants for unlawful and ongoing infringement of Plaintiff's trademark rights, monetary relief in the form of actual damages, and attorneys' fees and costs.

### A.    Permanent Injunctive Relief

Defendants should be permanently enjoined from any further infringement of Plaintiff's trademark.  "A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  *Gucci Am., Inc.* v. *Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (internal quotation omitted).  Both requirements are met here.

The Court has statutory authority to issue a permanent injunction.  As to Counts One and Two, the Lanham Act gives district courts "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. §§ 1116(a), 1125(5).  The Lanham Act likewise permits injunctive relief on a motion for default judgment.  *See Harris* v. *Fairweather*, No. 11-cv-2152, 2012 WL 3956801, at *9–11 (S.D.N.Y. Sep. 10, 2012), *report and recommendation adopted*, No. 11-cv-2152 (S.D.N.Y. Oct. 19, 2012) (granting default judgment and permanently enjoining defendant from further trademark infringement under Lanham Act); *Otter Prods., LLC* v. *4PX Express USA Inc.*, No. 23-cv-11111, 2025 WL 2144780, at *4 (S.D.N.Y. July 29, 2025) (same).  Separately, as to Count Four, New York General Business Law § 360-L provides that "dilution of the distinctive quality of a mark

15

or trade name shall be a ground for injunctive relief in cases of infringement of a mark."  N.Y. Gen. Bus. Law § 360-L.  Because Plaintiff is entitled to relief on these claims, *see supra* Sections I.A.1, 2, 4, the Court need not reach the additional claims to issue a permanent injunction.  *See U.S. Polo Ass'n, Inc.* v. *PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013).

Plaintiff has met the prerequisites for an injunction.  More specifically, it has demonstrated (1) actual success on the merits, (2) irreparable harm absent an injunction, (3) absence of an adequate remedy at law, such as monetary damages, (4) the balance of hardship between the parties warrants an injunction, and (5) the public interest would not be disserved by issuance of an injunction.  *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 539.

To begin, Plaintiff wins on the merits.  By defaulting, Defendants conceded that Plaintiff's well-pleaded allegations are true.  *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234.  And Plaintiff has adequately alleged each of its eight claims.  *See supra* Sections I.A.1–8.  This establishes Plaintiff's success on the merits.  *See Tyrrell-Miller*, 678 F. Supp. 2d. at 120.

Next, Plaintiff will suffer irreparable harm absent a permanent injunction.  The Trademark Modernization Act of 2020 provides trademark holders with a "rebuttable presumption of irreparable harm upon a finding of a violation . . . in the case of a motion for a permanent injunction."  15 U.S.C. § 1116(a).  Defendants, by their default, have failed to rebut Plaintiff's presumption that irreparable harm will occur if an injunction is not granted.  *See Allstar Mktg. Grp. LLC* v. *andnov73*, No. 20-cv-9069, 2023 WL 5208008, at *5 (S.D.N.Y. Aug. 14, 2023) (holding that "[t]he Defaulting Defendants, by virtue of their default, have not rebutted the [Lanham Act's] presumption.").  If Defendants are not ordered to cease their unlawful use of

16

the mark, Plaintiff will continue to be harmed by confusion over the meaning of the mark and the resulting loss of reputation and goodwill. In the time since the Superior Court of the District of Columbia transferred to Plaintiff "[a]ll of [Proud Boys International]'s interests in the trademark 'Proud Boys,'" Plaintiff has transformed the mark from an emblem of hate and white supremacy into a symbol of the Church's mission of love, humanity, and racial justice. *See* Dkt. 1 ¶¶ 38, 56–58. This evolution of the mark, and Plaintiff's use thereof, has become notorious and is widely reported by prominent news and other media outlets. *See id.* ¶ 57. Defendants' continued, unauthorized use of the trademark is likely to cause confusion about the meaning of the mark and irreparably harm Plaintiff's goodwill and reputation.

Monetary damages alone cannot remedy these injuries. At least two of Defendants' infringing websites remain active (and the third could be reactivated) and continue to make unauthorized use of the mark. A "defaulting defendant may be presumed to be willing to continue their infringement of a mark." *3M Co.*, 2023 WL 3481608, at *6. Considering Defendants' default and history of avoiding their responsibilities, *see supra* pp. 4–5, "there is no guarantee that monetary damages will suffice to protect Plaintiff's [m]ark moving forward." *See 3M Co.*, 2023 WL 3481608, at *6. A permanent injunction is necessary to preserve Plaintiff's trademark rights.

Likewise, the balance of hardships favors Plaintiff. Without an injunction, Plaintiff faces recurring injury from Defendants' "continued infringement." *WPIX, Inc.* v. *ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012). Plaintiff suffers new, irreparable damage each day that Defendants use Plaintiff's mark on their websites and merchandise. In contrast, Defendants suffer no hardship: "it is generally accepted that an infringer cannot claim hardship due to 'the loss of ability to offer

17

its infringing product.'" *3M Co.*, 2023 WL 3481608, at *6 (quoting *WPIX*, 691 F.3d at 287). The balance of hardship in Plaintiff's favor further supports a permanent injunction.

Finally, as to the public interest, a "permanent injunction is the most effective safeguard for the public against confusion." *Id.* Plaintiff explained the confusion resulting from Defendants' ongoing, unauthorized use of the "Proud Boys" mark. *See* Dkt. 1 ¶¶ 38, 56, 58, 64, 70. A permanent injunction "assur[es] that the mark [the public] associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC* v. *NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). This Court should enter permanent injunctive relief to prevent further irreparable harm to Plaintiff.

### B.    Money Damages

Plaintiff seeks damages under Counts One and Two under the Lanham Act, as well as damages for the disgorgement of profits Defendants unjustly obtained through their infringement of Plaintiff's mark. 15 U.S.C. §§ 1117(a), 1125(c). Plaintiff has identified evidence of Defendants' continued use of the "Proud Boys" mark to sell merchandise and attract dues-paying members. *See* Chepiga Decl. ¶¶ 35, 37–39. Defendants' failure to engage in discovery means Plaintiff has been unable to obtain precise information about the amount of revenue generated by Defendants' merchandise sales and membership dues. The Court should award actual damages in the amount of $75,000, calculated as $25,000 for each of the three instances of Defendants' infringement alleged in the Complaint, *see* Dkt. 1 ¶ 41, plus post-judgment interest at the statutory rate.

Defendants have unlawfully used the "Proud Boys" trademark online and likely elsewhere since 2021, and Plaintiff has suffered actual damages as a result. Defendants lost the right to the trademark on February 1, 2021, when their license was withdrawn, and on February

18

3, 2025, when the Superior Court of the District of Columbia transferred the trademark interests to the Church, imposed a lien on the mark, and enjoined Proud Boys International from selling, transferring, or disposing of it without the Church's consent.  *See supra* n. 1; Dkt. 1 ¶¶ 32–40.

Yet evidence obtained by Plaintiff suggests that after losing the right to use the "Proud Boys" trademark, Defendants persisted in using the mark on clothing, merchandise, and on websites that prominently use the Proud Boys mark and recruit new, dues-paying members to the Hudson Valley Chapter.  Dkt. 1 ¶¶ 40–52.  Such use leverages Plaintiff's trademark to promote the Hudson Valley Chapter and to facilitate alleged sales and distributions of branded items in violation of the Church's ownership of the mark and its lien on proceeds from use of the mark. This continued, unauthorized use directly injures Plaintiff in a quantifiable amount.

The Church is entitled to all profits earned by Defendants' unlicensed use of the mark. *See* 15 U.S.C. §§ 1117(a) (upon a violation of the Lanham Act, "plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits . . ."). Defendants earned profits from the sale of clothing and merchandise that use the "Proud Boys" trademark to signify Proud Boys membership and affiliation.  It is indisputable that the Hudson Valley Chapter has used the "Proud Boys" trademark on various clothing items worn by chapter members and supporters, including name plates, hats, and stickers.  Dkt. 1 ¶ 47; Transcript of Record at 161, *United States* v. *Pepe*, No. 1:21-cr-00052-TJK (2024) (No. 169); Chepiga Decl. at ¶ 37–39.  On information and belief, such infringement did not stop after Plaintiff sent Defendants a cease-and-desist letter.

Additionally, Defendants continue to profit from at least two active websites that infringe Plaintiff's "Proud Boys" trademark.  *See* Dkt. 1 ¶ 41; *see supra* pp. 2–3; Chepiga Decl. at ¶ 32. As evident from the websites' various recruitment and contact pages, Defendants use the phrase

19

"Proud Boys" to engage in recruitment activities to solicit the payment of membership dues. Dkt. 1 ¶¶ 46, 49–52.  Per the Proud Boys Constitution and Bylaws, membership dues are voluntarily paid each year by members "in an amount not to exceed $25 per year."  Chepiga Decl. at ¶ 35.[3]

Plaintiff has suffered actual damages because Defendants, through their continued and unauthorized use of the "Proud Boys" trademark without payment of licensing or royalty fees, dissipate the value of the trademark and violate the lien granted by the D.C. Superior Court.

### 1.    Plaintiff Is Not Required to Prove Actual Damages

Damages can be determined in this case without an inquest.  Where, as here, a "defendant has defaulted and there has been no discovery, it is impossible to determine defendant's profits from the infringing behavior."  *Navika Cap. Grp., LLC* v. *John Doe*, 14-CV-5968, 2017 U.S. Dist. LEXIS 2926, at *37 (E.D.N.Y. Jan. 6, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 40820 (E.D.N.Y. Mar. 20, 2017).  In similar default cases, courts have not required plaintiffs to prove actual damages.  In *Navika Capital Group*, a defendant defaulted and refused to participate in discovery in a dispute over an unregistered mark.  *Navika*, 2017 U.S. Dist. LEXIS 2926, at *6–7.  The district court adopted the magistrate judge's conclusion that "[p]roof of actual damages or profits is not necessary, as it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."  *See id.* at *38.  In such scenarios, *Navika* explained, courts "may rely on

---

[3]    Based on subscriber numbers for comparative chapters in New York, Plaintiff conservatively estimates there are around 100 dues-paying members in the Hudson Valley Chapter.  Since Defendant's license to use the trademark was withdrawn on February 1, 2021, Defendants would have received a total of $12,500 in membership dues ($2,500 per year across five years) which could have been used for the payment of royalties to Plaintiff for Defendants' use of Plaintiff's mark.  *See* Dkt. 1 ¶¶ 32–40.

20

circumstantial evidence of the extent of the defendant's wrongdoing to assess damages," resolve

"[d]oubts as to the actual amount of damages . . . against the party who frustrates proof of those

damages," and "calculate damages 'at the highest reasonable ascertainable value.'" *Id.* (citations

omitted); *see also, e.g.*, *Ortho Sleep Prods., LLC* v. *Dreamy Mattress Corp.*, No. 11-cv-6049,

2012 WL 6621288, at *9 (E.D.N.Y. Aug. 29, 2012) ("Proof of actual damages or profits is not

necessary, as it will be enough if the evidence shows the extent of the damages as a matter of just

and reasonable inference, although the result be only approximate.").

This practice makes sense.  It recognizes that when a defaulting defendant "refuse[s] to

produce any records[,]" they "must bear the burden of uncertainty" that results.  *See Louis*

*Vuitton S.A.* v. *Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985).  In these situations,

courts may exercise "broad discretion . . . guided by principles of equity" to determine

appropriate damages.  *Burndy Corp.* v. *Teledyne Indus., Inc.*, 748 F.2d 767, 771–72 (2d Cir.

1984).  In exercising this discretion, courts "consider a defendant's 'willful and deliberate

behavior' in fashioning an award that will act as an appropriate deterrent" for future violations.

*Navika*, 2017 U.S. Dist. LEXIS 2926, at *37–38.

    2.    *Plaintiff's Damages Are Estimable by Reference to Statutory Damages*

Because Defendants' failure to litigate prevents the Court from assessing Defendants'

actual profits from their infringement of Plaintiff's mark, this Court should calculate Plaintiff's

damages with reference to the statutory damages authorized by the Lanham Act.  *See* 15 U.S.C.

§§ 1117(a), 1125(c)(5).  In default cases, statutory damages are an important reference because

Plaintiffs are "unable to conduct the discovery necessary to calculate actual damages[.]"  *See*

*Coach, Inc.* v. *Reggae Hot Spot, Inc.*, No. 10-cv-4902, 2010 WL 5536521, at *2 (S.D.N.Y. Dec.

10, 2010).  In cases involving the use of a counterfeit mark,[4] the Lanham Act permits statutory damages "in the amount of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. §1117(c).  Where, as here, the infringement is willful, damages are permitted up to $2,000,000 per counterfeit mark.  *Id.*

Based on the Lanham Act's guidelines, Plaintiff submits that a fair approximation of the actual damages in this case is $25,000 for each of Defendants' three infringing websites, for a total of $75,000.  This calculation of damages is conservative as it is (a) predicated on Defendants' infringement in three websites Plaintiff has identified, each of which contain numerous instances of infringement of Plaintiff's "Proud Boys" trademark, *see* Dkt. 1 ¶¶ 41–45, 52; (b) far below the $2 million maximum willful infringement penalty permitted by the Lanham Act for each counterfeit mark, *see* 15 U.S.C. §1117(c); and (c) significantly less than the range of statutory damages awarded by courts in comparable circumstances.  *See, e.g., Sream, Inc.* v. *Khan Gift Shop, Inc.* No. 15-cv-02091, 2016 WL 1130610 (S.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1169517 (S.D.N.Y. Mar. 22, 2016) (awarding $50,000 in statutory damages per infringing mark); *Pitbull Prods., Inc.* v. *Universal Netmedia, Inc.* 2007 U.S. Dist. LEXIS 82201, at *10–11 (S.D.N.Y. Nov. 7, 2007) (awarding $250,000 per use of the infringing mark because defendant's default "left the Court with no information as to any of the factors relating to the defendants' circumstances.").

    **C.    Attorneys' Fees and Costs**

---

[4]    Though the mark at issue here is not counterfeit, the framework provided in the Lanham Act regarding statutory damages is nonetheless a helpful aid.  And although the Lanham Act makes statutory damages available only in cases involving infringement of registered marks, 15 U.S.C. §1116(d)(1)(B), it is a guidepost for determining the damages wrought by infringement of common law marks like Plaintiff's.

Plaintiff is entitled to reasonable attorneys' fees and costs under the Lanham Act.  *See* 15 U.S.C. § 1117(a).  In trademark infringement cases, courts in this District commonly award attorney's fees to prevailing plaintiffs.  Plaintiff submits this request for attorneys' fees incurred by Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss" or the "Firm") and the Lawyers' Committee for Civil Rights Under Law (the "Lawyers' Committee") (collectively, "Plaintiff's counsel.")

In connection with its litigation of this action, Plaintiff's counsel seeks reimbursement for $183,603.50 in attorneys' fees incurred by Paul, Weiss and $15,849.50 incurred by the Lawyers' Committee, for a total of $199,453.00 in attorneys' fees.  Plaintiff's counsel volunteered thousands of hours of work to vindicate the Church's rights and to deter the Proud Boys, their supporters, and other white supremacists from attacking the Church, though counsel seeks reimbursement for only a fraction of that work.  *See* Chepiga Decl. ¶¶ 40, 56; Decl. of Len Kamdang ¶ 12.  Plaintiff's counsel has expended resources to actively investigate and litigate this case, a task made more difficult by Defendants' refusal to engage in litigation.  The total amount of fees sought is therefore reasonable in light of the work performed.

Importantly, Paul, Weiss does not seek to benefit through this request.  Any attorneys' fees recovered will be donated to its client, the Church.[5]  *See* Chepiga Decl. ¶ 42.  The Church is a seminal cultural institution in Washington D.C.  It is the place where Frederick Douglass had his funeral, where Eleanor Roosevelt spoke, and where President Obama prayed on the morning of his second inauguration.  The Church is focused on, among other missions, combatting food insecurity through its Food Bank, equipping parents and families with biblically grounded

---

[5]  Co-counsel, the Lawyers' Committee for Civil Rights Under Law, is a 501(c)(3) non-profit organization dedicated to advancing racial justice.  Any fees collected for their time will support their groundbreaking civil rights work.

23

teaching, and building community safety.  Paul, Weiss hopes that any recoveries will help the Church continue its work to promote justice and understanding.

          *1.*        *The Lanham Act Allows Recovery of Reasonable Attorneys' Fees*

The Lanham Act provides that courts "in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  District Courts have "wide latitude" to decide whether a case is "exceptional" under the "totality of the circumstances."  *4 Pillar Dynasty LLC* v. *New York & Co., Inc.*, 933 F.3d 202, 215 (2d Cir. 2019) (quoting *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  Courts consider a variety of non-exclusive factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Octane Fitness*, 572 U.S. at 554 n.6.  Applying those factors, courts within the Second Circuit "have regularly awarded attorneys' fees against defaulting defendants under [the Lanham Act]."  *Streamlight, Inc.* v. *Gindi*, No. 18-cv-987, 2019 WL 6733022, at *17 (E.D.N.Y. Oct. 1, 2019) (collecting cases).  This Court should do the same.

***First***, Defendants have not only defaulted, but have willfully continued to use Plaintiff's mark, despite being notified of their infringement in a cease-and-desist letter and this lawsuit.  This "extensive use of plaintiff's marks, which continued after the commencement of litigation, combined with [Defendants'] default, renders this an exceptional case warranting an award of fees."  *See Next Realty, LLC* v. *Next Real Estate Partners LLC*, No. 16-cv-6327, 2019 WL 1757781, at *5 (E.D.N.Y. Mar. 11, 2019); *see also Antetokounmpo* v. *Costantino*, No. 21-cv-2198, 2021 WL 5916512, at *8 (S.D.N.Y. Dec. 15, 2021), *report and recommendation adopted*, 2022 WL 36232 (S.D.N.Y. Jan 4, 2022) (awarding attorneys' fees where defendants received a

24

cease-and-desist letter and were thus "put on notice of the impropriety of their conduct but allegedly continued to sell the infringing goods . . . thereby frustrating any meritorious defenses and strengthening [plaintiff's] litigating position.").

**Second**, this case "stands out from others with respect to the substantive strength" of Plaintiff's litigating position. *Octane Fitness*, 572 U.S. at 554. Plaintiff's meritorious allegations are unrebutted; this Court struck Pepe's Answer as deficient while acknowledging that Pepe's affirmative defenses were "supported by zero facts." Dkt. 29 at p. 3. *See Flawless Style LLC* v. *Saadia Group LLC*, No. 23-cv-2354, 2025 WL 2780121, at *10 (S.D.N.Y. Sep. 29, 2025) (finding a case so exceptional as to warrant attorneys' fees where the Court struck defendant's answer and plaintiff's allegations "are entirely unrebutted").

**Third**, Plaintiff is entitled to attorneys' fees because of the "objective unreasonableness" of Defendants' behavior and the need "to advance considerations of compensation and deterrence." *See Octane Fitness*, 572 U.S. at 554 n.6. Pepe has repeatedly failed to adhere to filing and discovery deadlines or appear at scheduled meet and confers. *Supra* pp. 3–5. By "repeatedly flouting the Court's orders and frustrating the litigation process," Pepe has created extra work for Plaintiff's counsel, which "in turn has inflated Plaintiff['s] legal expenses over the course of this litigation." *Flawless Style*, 2025 WL 2780121, at *10. Such "exceptional disregard for the Court's authority" throughout the course of this litigation "justifies an award of attorneys' fees." *Id.* Hudson Valley Chapter's failure to appear in this litigation also displays "willful conduct" and such conduct, "in light of the Lanham Act's goals of deterrence, support[s] an award of fees." *Mintable Pte. Ltd.* v. *Mintology Inc.*, No. 23-cv-8215, 2024 WL 4493770, at *1 (S.D.N.Y. Oct. 15, 2024).

###### 2.    *The Requested Fees are Reasonable*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany & Albany Cnty. Bd. Of Elections,* 522 F.3d 182, 186 (2d Cir. 2008) (quoting *Hensley* v. *Eckerhart,* 461 U.S. 424, 433 (1983)).  Plaintiff's request for $199,453.00 in attorneys' fees and costs is based on a reasonable application of this formula.

###### (A)    *Plaintiff's Estimated Hourly Rate is Reasonable*

Plaintiff's request for $199,453.00 in fees is based on a reasonably estimated hourly rate. An hourly rate is considered reasonable if it is what a "reasonable, paying client would be willing to pay." *Id.* at 184 n.2.  In determining a reasonable hourly rate, courts in this District consider hourly rates approved in other cases in the District and may consider its own familiarity with prevailing rates in the District.  *Malletier* v. *Artex Creative Int'l Corp.,* 687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010).  Courts also consider the *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly* v. *City of New York*, 934 F.3d 222, 228 (2d Cir. 2019).  Courts in this District have estimated that, in Lanham Act cases, "hourly rates, ranging from $315–$585 per hour for an associate . . . [and] between $625 and $845 per hour for a partner, are reasonable considering the prevailing rates for firms engaging in complex litigation in this district." *Fleetwood Servs., LLC*

26

v. *Ram Cap. Funding, LLC*, No. 20-CV-5120, 2023 WL 112429, at \*4 (S.D.N.Y. Jan. 5, 2023) (quoting *Tiffany & Co.* v. *Costco Wholesale Corp.*, 2019 WL 120765, at \*10 (S.D.N.Y. Jan. 7, 2019).

Here, Paul, Weiss counsel seeks similar hourly rates to those approved in these prior Lanham Act cases for the attorneys working on this matter, i.e., $845/hour for Geoffrey Chepiga, $585/hour for Shawn Estrada and Edmund Bao, and $400/hour for Walter Bonne. *See Fleetwood Servs.*, 2023 WL 112429, at \*4. These are well below the standard billable rates charged to the firm's paying clients. *See* Chepiga Decl. ¶ 53.

Counsel for the Lawyers' Committee made use of the Fitzpatrick Matrix, commissioned by the U.S. Attorney's Office for the District of Columbia to provide "a reliable assessment of fees charged for complex federal litigation in the District." *See DL* v. *District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019); *see also NLRB* v. *Schmidt*, No. 23 Misc. 51, 2024 WL 967225, at \*2–3 (S.D.N.Y. Mar. 5, 2024) (Fitzpatrick Matrix's hourly rates reasonable for litigation in New York City). *See* Declaration of Len Kamdang ("Kamdang Decl.") ¶ 18.

### (B)    *Plaintiff's Estimated Hours Are Reasonable*

Similarly, the fees Plaintiff requests are based on a reasonable number of hours expended by its counsel. In analyzing fee requests, "[t]he district court has broad discretion" in determining if time was reasonably expended and "need not ... scrutinize[ ] each action taken or the time spent on it." *Aston* v. *Sec'y of Health & Human Servs.,* 808 F.2d 9, 11 (2d Cir.1986); *see also Hensley*, 461 U.S. at 436 ("There is no precise rule or formula for making these determinations."). Here, over the course of the last 12 months, for time spent investigating the claims and litigating this case, Plaintiff seeks reimbursement for a total of 408.2 hours across six lawyers and staff. *See* Chepiga Decl. ¶ 61; Kamdang Decl. ¶ 19. The number of attorney hours

27

expended is reasonable given the complexity of the issues, the efforts needed to investigate the Hudson Valley Chapter, the research done into Plaintiff's different legal claims, the repeated attempts to compel Defendants to respond to the Complaint and engage in discovery, and the various motions filed in this Court, including the motion to strike Pepe's Answer and this motion for default judgment.

Notably, Plaintiff is not seeking reimbursement for all time billed to this matter. Plaintiff seeks to recoup only the time spent by six lawyers, who were part of a larger team of attorneys and paralegals who contributed additional help, including additional research and case management.[6]  *See* Chepiga Decl. ¶ 40; Kamdang Decl. ¶ 13.

### III.    No Inquest into Damages Is Necessary

The Court can compute damages in this matter without an inquest.  "'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.'"  *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234 (quoting *Tamarin* v. *Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)). If clear allegations and documentary evidence are presented, "a hearing is not necessary to assess damages and issue a default judgment," *Trs. of the Loc. 813 I.B.T. Ins. Tr. Fund* v. *Chinatown Carting Corp.*, No. 06-cv-05967, 2008 WL 5111108, at *4 (E.D.N.Y. Dec. 4, 2008), and the Court may award damages based upon the evidence in the record.  *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234.  This Court has awarded damages for trademark infringement without requiring an inquest or evidentiary hearing.  *See, e.g.*, *Foxmind Canada Enter. Ltd.* v. *ABCTEC*, No. 21-cv-5146 (KPF) (S.D.N.Y. Feb. 2, 2023) (Amended Final Default

---

[6]    The Washington Lawyers' Committee for Civil Rights & Urban Affairs elected not to include its fees for billing judgment at this time but does not waive the right to request fees if and when a future fee petition is necessary.

Judgment and Permanent Injunction Order), Dkt. 174; *Low Tech Toy Club*, *LLC* v. *Beanfun Home Store et al.*, No. 24-cv-4982 (KPF) (S.D.N.Y. Apr. 4, 2025), (Final Default Judgment and Permanent Injunction Order), Dkt. 42.  As set forth above, *supra* Section II.B.2, the Court may determine actual damages in this case by looking to the Lanham Act's statutory damages as a guidepost in light of Defendants' default and failure to engage in discovery.  An inquest hearing is thus unnecessary.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests a default judgment against Defendants.  Plaintiff also respectfully requests the relief detailed in the Complaint and this motion, including injunctive relief, damages, and attorneys' fees.

Dated: January 16, 2026

Respectfully submitted,

**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**

By: */s/  Len H. Kamdang*
    Len H. Kamdang
    Freya Jamison
    1500 K Street NW, Suite 900
    Washington, D.C. 20005
    Tel: 202-662-8329
    Fax: 202-783-0857
    Email: lkamdang@lawyerscommittee.org
           fjamison@lawyerscommittee.org

*Co-Counsel for Plaintiff Metropolitan African
Methodist Episcopal Church*

**WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS &
URBAN AFFAIRS**

By: */s/  Kaitlin Banner*
    Kaitlin Banner (*pro hac vice application
    forthcoming*)
    700 14th Street NW, Suite 400
    Washington, D.C. 20005
    Tel: 202-319-1000
    Fax: 202-319-1010
    Email: kaitlin_banner@washlaw.org

*Co-Counsel for Plaintiff Metropolitan African
Methodist Episcopal Church*

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

By: */s/  Daniel J. Kramer*
    Daniel J. Kramer
    Geoffrey R. Chepiga
    Daniel S. Reich
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Tel: 212-373-3000
    Fax: 212-757-3990
    Email:  dkramer@paulweiss.com
           gchepiga@paulweiss.com
           dreich@paulweiss.com

By: */s/  Paul D. Brachman*
    Paul D. Brachman
    2001 K Street, NW
    Washington, D.C. 20006-1047
    Tel: (202) 223-7300
    Fax: (202) 223-7420
    Email: pbrachman@paulweiss.com

*Co-Counsel for Plaintiff Metropolitan African
Methodist Episcopal Church*

**WORD COUNT CERTIFICATION**

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1, requiring a limit of 8,750 words.  I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block is 8,749 words.

/s/ *Daniel J. Kramer*